[No. 4139.]

THE MEDANO DITCH CO. V. ADAMS, TRUSTEE.

HUDSON ET AL. V. ADAMS, TRUSTEE.

29  317
33  383

1.  WATER RIGHTS—ADJUDICATION DECREE—EVIDENCE.

A decree adjudicating and awarding priorities to the use of water in the statutory proceeding for that purpose is *prima facie* evidence that appropriations of water for purposes of irrigation were made of the dates and volumes awarded the ditches by the decree.

2.  PRACTICE—VIEW OF PREMISES BY TRIAL JUDGE—EVIDENCE.

Where the trial judge at the request of both parties viewed the premises in controversy, without determining whether or not knowledge thus obtained can be given the effect of substantive testimony, it must be considered by the reviewing court that he was thereby better enabled to understand and apply the evidence of the respective parties on the subject under consideration.

3.  WATER RIGHTS—SOURCE OF SUPPLY—EVIDENCE.

Plaintiff appropriated the waters of Big and Little Spring creeks, which have their source in two springs which rise in the San Luis valley west of the great sand dunes. Defendants subsequently appropriated water from the Medano creek; which has its source in the Sangre de Cristo range and flows southwesterly to the sand dunes, when it turns to the south along the eastern base of the sand hills until it reaches the south end of the hills, when it runs almost west until it is lost in the sand. The point of disappearance of the water of Medano creek varies in accordance with the amount of water flowing in the creek. Big Spring is on a line .with the course of the Medano where it emerges from the mountain range and strikes the sand hills, and is distant about seven miles. Little Spring is three miles south of Big Spring. Witnesses testified that many years ago the channel of the Medano was visible to the source of Little Spring, and at times of high water in the Medano it had been seen to flow very near to the spring, and one witness had seen the water flow into the spring. That a well-defined depression like an old water channel extended from the Big Spring into the sand hills which, if continued, would strike about the mouth of the canon where Medano creek emerges from the mountains. That when the waters of Medano were muddy the water in the springs was also discolored. That as the water was high or low in the Medano it was correspondingly high or low in the springs. That since the diversion of water from Medano creek by defendants there has been a decrease in the flow of the springs. There is no other known source of supply to the springs, and no other known outlet for the water of Medano creek. The line of greatest descent from the mouth of the M .dano ca yon is in

the direction of the springs and the general drainage of the country is to the west. Held that the evidence was sufficient to sustain the finding of the trial court that the water of the Medano creek passed by underground channels to and formed the source of supply of both springs.

4. WATER RIGHTS—UNDERGROUND CHANNELS.

Underground currents of water which flow in well-defined channels the course of which can be distinctly traced, are governed by the same rules of law as streams flowing upon the surface. The channels and existence of such streams, though not visible, are "defined" and "known" within the meaning of the law when their course and flow are determinable by reasonable inference.

5. WATER RIGHTS—INJUNCTION.

Where a junior appropriator by diverting the water of a stream that a prior appropritor is entitled to divert and use in irrigation, causes a shortage in the water of the stream so that the prior appropriator cannot obtain the water to which he is entitled, the injury is a continuing one, and injunction to restrain the junior appropriator from diverting the water is the proper remedy.

6. WATER RIGHTS—DECREES—PLEADING.

In an action to protect water rights already established by the statutory adjudication a complaint which alleges the adjudication of water rights in the district and the award to the ditch or ditches through which plaintiff claims his rights states a *prima facie* case so far as it relates to the appropriation for the purposes of irrigation.

7. SAME.

In pleading a decree adjudicating water rights it is not necessary to literally follow the prescribed formula and allege that the judgment was duly given or made, but it is a sufficient compliance with section 65 of the code if the ultimate fact is otherwise stated.

8. PRACTICE—PLEADING—PARTIES.

An objection on the ground of a defect of parties must be raised by demurrer or answer, else it is waived.

9. WATER RIGHTS—JURISDICTION.

The fact that the priorities of water rights of a district have been adjudicated in one county does not preclude another county from assuming jurisdiction in a cause where an appropriator seeks to restrain others from diverting water to which he is entitled under the decree.

10. WATER RIGHTS—INJUNCTION—DECREE.

Although a decree in favor of a prior appropriator restraining a subsequent appropriator from diverting water, literally inhibits the defendant from diverting any water between certain dates named, the law reads into the decree that the inhibition only covers such portion of the

period between the dates specified as the plaintiff has use for the water.

II—EVIDENCE—DECREES—ASSIGNMENT OF ERROR—WAIVER.

Where no error is assigned on the admission in evidence of a decree, objection to its admission will be considered as waived.

*Appeal from and Error to the District Court of Saguache County.*

Appellee and defendant in error commenced separate actions below for the purpose of obtaining a decree enjoining appellant and plaintiffs in error from diverting water from Medano creek. Plaintiff in each case was the same party, and claimed to be the owner of appropriations of water for the purposes of irrigation from Big and Little Spring creeks, which antedated any appropriation on the part of the defendants from Medano creek; that the latter was the source of supply of Big and Little Spring creeks, and by the diversion on the part of defendants from Medano creek the supply to which plaintiff was entitled and needed was diminished, to his damage. The court found these issues in favor of plaintiff, and entered decrees enjoining the defendants in each case from diverting any water from Medano creek from May 15 to October 1, of each year. From these decrees the defendant in the one case appeals, and in the other the defendants bring the case here for review on error. By agreement of parties the causes were tried below upon practically the same testimony. The issues of fact and questions of law involved are the same in each case, and will be considered together. The parties will be referred to in the opinion as plaintiff and defendants.

Mr. Henry Hunter, Mr. J. C. Gunter, and Mr. John A. Gordon, for appellant and plaintiffs in error.

Messrs. Wolcott, Vaile & Waterman, and Mr. W. W. Field, for appellee and defendant in error.

Mr. Justice Gabbert delivered the opinion of the court.

The first proposition advanced by counsel for defendants is, that the testimony does not establish an appropriation by plaintiff of the waters of Big and Little Spring creeks which antedates the diversion of the waters of Medano creek by them. If the rights of plaintiff in this respect depended solely upon testimony to establish an actual application of the waters of Big and Little Spring creeks for the purposes of irrigation, this proposition might have some force. Such, however, is not the case. In each of his complaints plaintiff claimed an appropriation of the waters of these streams through Los Ojos, Hull, South Number One and South Number Two ditches. Water district No. 25 embraces the drainage of Medano and Big and Little Springs creeks. It appears from a decree of the district court of Costilla county entered at the March term, 1895, and introduced in evidence, that under a statutory adjudication of water rights in that district the ditches in question were awarded different priorities, of specific volumes of water, from Big and Little Spring creeks, dating from March 10, 1875, to May 1, 1881. The ditches of defendants were constructed in 1892 and 1894. The water decree was *prima facie* evidence that appropriations of water for purposes of irrigation had been made from those streams of the dates and volumes awarded the ditches through which

plaintiff asserts his rights, antedating the rights initiated by defendants.

It is next urged by counsel for defendants that the testimony does not establish that the waters of the Medano contribute substantially to those of Big and Little Spring creeks, and that if they do, it is only by percolation. At the request of counsel for both sides, the trial judge viewed the premises. Whether or not the knowledge thus obtained should be given the effect of substantive testimony, we do not determine. We must consider, however, that he was thereby better enabled to understand and apply the evidence of the respective parties on the subject under consideration. Our province in reviewing the testimony is to ascertain whether or not the findings of facts are supported by the evidence. If they are, we cannot interfere by substituting our judgment for that of the trial court upon the weight of the evidence in the case. *Colorado Fuel & Iron Co. v. Pryor*, 25 Colo. 540. The testimony is very voluminous, and to notice it in detail would be impracticable. Its review will, therefore, be limited to a mention of those matters which tend to support the finding of the trial judge, that Medano creek is the source of supply of Big and Little Spring creeks, for the purpose of ascertaining if there is sufficient legal evidence to support the finding on this subject.

Medano creek rises near the summit on the westerly side of the Sangre de Cristo range, and flows southwesterly until, near the mouth of the canyon from which it issues, it is intercepted by a range of hills known as the Great Sand Dunes, from which point its course is along the base of those hills on the east side, nearly south until it reaches the south end where it flows almost west. In this course it unites

with the Mosca creek, a small stream rising in the same range of mountains. When the water is low it disappears in the sand of the channel at the base of these hills, sometimes at one point and sometimes at another, regulated in a great degree by the volume of water flowing. The sand hills begin at the base of the main range, and at or near this point are several hundred feet in height, several miles in width and gradually diminish in altitude and width as they extend south, until merged in the San Luis valley. Big and Little Spring creeks rise on the west side of these hills, in a comparatively sandy level immediately adjoining their base. From the point where Medano creek is deflected in its general course, to the source of Big Spring creek, is about seven miles southwesterly, and from the point where the waters of the Medano ordinarily disappear, when high, the source of Little Spring creek is distant about three miles, almost west. The sources of Big and Little Spring creeks are relatively almost north and south of each other, and distant about three miles.

Witnesses state that many years ago a well defined channel of the Medano was plainly visible to the source of Little Spring creek, and that they had seen water running in this channel very close to the head of the latter creek. One witness in particular states that in 1863 or 1864 he had seen the water of Medano running to Little Spring creek. Other witnesses state that this occurred again in 1895. Witnesses also state that a well defined depression, like an old channel of a water-bed, extends from near the source of Big Spring creek in a northwesterly direction, for a distance of about two miles, which, if continued in its course, would strike, after passing through the sand hills, about the mouth of Medano canyon; that when-

ever the water of Medano creek diminishes, the waters of Big and Little Spring creeks also decline after a lapse of two or three weeks from the time when the waters of the Medano become low; that when the Medano is muddy, the waters of Big and Little Spring creeks would also be riley, or show discoloration. Witnesses also state that since the diversion by defendants from the head waters of Medano creek, there has been a marked decrease in the flow of Big and Little Spring creeks. The general drainage of the country, with the exception of the Medano, is towards the west. According to surveys, the most rapid line of decent from near the mouth of Medano canyon is in the direction of Big Spring creek.

The theory of plaintiff is that the San Luis valley was at one time a great lake, the eastern shore of which was near the present sources of Big and Little Spring creeks; that when the lake disappeared, the sands of its bed were blown across the valley by the prevailing westerly winds, and deposited upon the wash and drift extending from the base of the main range immediately adjoining the mouth of the canyon of the Medano, and constituting the divide between that stream and Sand creek on the north, and Mosca on the south; that before this deposit occurred, the natural channel of Medano creek extended through this wash and drift in the same general direction of the canyon, which would carry it on a line with the present channel of Big Spring creek; that the accumulation of Sand in its original channel finally became so great that the waters were unable to longer cut their way through and over it on the surface, but that they continued to flow or percolate through the course sand, gravel and boulders composing the

original bed of the creek, and finally emerged as the source of Big Spring creek; that the obstruction of the old channel prevented all the waters from pass-ing into the valley in that way, and as the sands gradually accumulated and raised, the excess water flowed over them in a general southerly direction along the eastern base of the sand hills, uniting with Mosca creek, and resulting in the creation of Little Spring creek; that the continuous flow of Mosca creek upon the surface obstructed by the sand causes, and that the flow of Little Spring creek is practically on and over the ancient bed of Mosca creek. Scientific writers on the geological for-mations and conditions of the San Luis valley tend to support this theory. The testimony of the witnesses with respect to the present physical condi-tions within their own recollection also corroberate it. It is known that the channel which formerly ex-isted from the Medano to the head of Little Spring creek has in a great measure been obliterated within the past few years, by reason of the accumulation of sand over its channel; and that the bed of the Me-dano along the base of the sand hills is being gradu-ally raised from the same source.

With the exception of the Medano, after reaching the sand hills, the general drainage of the country is to the southwest. The course of that stream from the point where it intersects the sand dunes is al-most at right angles with the course of the gulches and ravines between the canyon of the Medano and Mosca creek, and at an angle of about forty-five de-grees with the other principal streams issuing out of the Sangre de Cristo range on that side. The ma-terial which forms these hills must have been brought from some other point. That this is true is demon-

strated by the fact that the process of accumulation of sand on and along them is still in operation. The flow and character of the Medano is reflected in the Big and Little Spring creeks. Experiments, the results of which were introduced in evidence, indicate that it requires ab.,ut the length of time for waters to pass from the Medano to those streams which intervenes between a change in the Medano and a corresponding change in them. These streams rise from amphitheatre-shaped basins, the water evidently coming from a stratum of saturated sand. There is no other source than the Medano (except such as Mosca may contribute to Little Spring creek) from which it can be reasonably presumed that the waters of these streams are supplied. There is no other known outlet for the waters of the Medano. So that, considering the topographical conditions, in connection with other facts stated by the witnesses, we are not required to enter the realm of conjecture in order to determine a connection between the Medano and the Big and Little Spring creeks, but on the contrary, the testimony leads irresistably to the conclusion that the Medano is the source of supply of these streams, that at some time in the distant past the sand hills did not exist, and that during this period the Medano found its way to the valley practically on a line from the mouth of the canon to the head of Big Spring creek. So with Mosca creek with respect to Little Spring creek. The accumulation of sand in and over the original channels of these creeks, composed, like all mountain streams of sand, gravel and boulders, would not render the old channels altogether impervious to water. The interstices of their original beds would not be filled by the sands accumulating on their surface.

Water could still find its way along and through their ancient beds. This underground flow would naturally follow the respective original channels, bounded by the original banks, and while its passage may, in a great measure, be through sand and gravel, nevertheless, such a stream when well defined, is as much a part of the flow of the water of a creek, to which it contributes as if visible. Such conditions do not present a case of percolating waters, within the meaning of the law. The subterranean volume of water which finds its way through the sand and gravel constituting the beds of the streams which traverse the country adjacent to the mountains of this section, are recognized as a part of the waters of the stream to the same extent as though flowing upon the surface. That the surface bed of such a stream may not be visible does not change the rule with respect to this class of flowing waters. Underground currents of water which flow in well-defined and known channels, the course of which can be distinctly traced, are governed by the same rules of law as streams flowing upon the surface. The channels and existence of such streams, though not visible, are "defined" and "known" within the meaning of the law when their course and flow are determinable by reasonable inference. *Platte Valley I. Co. v. Buckers Co.*, 25 Colo. 77; *McClellan v. Hurdle*, 3 Colo. App., 430; Kinney on Irrigation, §48; Gould on Waters, § 281; *Strait v. Brown*, 16 Nev. 317.

In this connection it is urged by counsel for defendants that the waters of Sand creek may possibly contribute to the supply of the waters of Big and Little Spring creeks. Sand creek rises in the same mountain range that the Medano does, and to the north. From the point where the Medano is first in-

tersected by the sand hills, and distant about five miles, Sand creek issues from the main range, flows for a short distance along the base of the sand hills on the west, and then continues in a generally south-westerly course over a bed of sand and gravel and through a country more or less sandy on either side. It has a defined channel all the way to the San Luis lakes, but at seasons of low water disappears entirely in the sands of its bed, long before it reaches these lakes. Its general course corresponds with the direction of the canyon through which it flows. It is a well known fact that lying between nearly all the streams issuing from the Sangre de Cristo range on the west there exists a defined watershed. That such a shed must have originally existed and been visible between the Medano and Sand creek is entirely probable. For the waters of Sand creek through any subterranean channel to reach either Big or Little Spring creek would require a drainage almost at right angles in direction from the natural drainage of the country. That such a condition would exist is not probable. Besides, experience demonstrates that the volume of water of the stream which disappears in the sands of its bed would follow the general course directly underneath the surface of such bed, so that it does not appear there are any facts or circumstances from which it can be reasonably inferred that Sand creek in any way contributes to either Big or Little Spring creek above the headgates of plaintiff's ditches.

It is also urged that a decrease in the flow of these streams may be accounted for by reason of the fact that many artesian wells have been sunk in the valley within the past few years, and that the water thus drawn off may have depleted the supply of these streams. These wells, with the exception of a few,

are not in the near vicinity of either of these streams and all are below and several miles to the west and southwest of the respective springs forming their sources. If the water supplying these streams in any manner contributes to the supply found in the artesian wells, we do not see how it would be physically possible for the wells, situated as they are, to deplete the flow at points distantly removed and above such wells. If water flowing through a stratum of sand is diverted at a point below its source of supply, it would not affect its level or flow above that point any more than a diversion of water from a visible stream upon the surface would affect its flow or volume above the point of such diversion.

It is also urged that injunction is not the proper remedy; that the complaints do not state causes of action; that there is defect of parties; that the court below was without jurisdiction, and that the decree is erroneous in unqualifiedly prohibiting the defendants from diverting any water between the dates specified.

The injury which the plaintiff was sustaining by reason of a shortage of the waters of the streams which he is entitled to divert and apply to irrigation uses is continuing in its nature. The defendants are responsible for this shortage. His rights antedate theirs. An action at law against them by plaintiff would be wholly inadequate, because it would require a multiplicity of suits to recover the damages which he might sustain from year to year on account of the shortage of waters from Big and Little Spring creeks.

This is an action to protect priorities already established, and not to determine them. Plaintiff states a *prima facie* case in so far as it relates to an appropriation of water for the purposes of irrigation by pleading the adjudication of water rights in the

water district in which the streams are situate, and
the award to the ditches through which he claims
such rights.   In pleading this judgment he has sub-
stantially complied with section 65 of the civil code,
which provides, in effect, that in pleading a judgment
of a court of special jurisdiction, it is not necessary
to state the facts conferring jurisdiction, but such
judgment may be stated to have been duly given or
made.   It is not necessary to literally follow the pre-
scribed formula; it is sufficient if from the averments
it appears that the ultimate fact which may be so
pleaded is otherwise stated.

A defect of parties must be raised by demurrer or
answer. If objection upon this ground be not so
taken, it is waived—Sec. 55 Civil Code.   No ques-
tion of this character was raised in the court below.

These actions are not statutory proceedings to ad-
judicate water rights; hence, the fact that adjudica-
tion proceedings had taken place in the district court
of Costilla county did not preclude the district court
of Saguache county from assuming jurisdiction of
these cases.

Literally construed, the decree does inhibit the
defendants from diverting any water between the
dates specified.   The law, however, reads into the
decree that this inhibition only covers such portion
of the period between the dates specified that plaint-
iff has use for the water for the purposes of irriga-
tion.

The judgment of the district court is affirmed.

*Affirmed*

Mr. JUSTICE STEELE dissenting.

I cannot agree with my associates in the disposal

of this case.   I do not think the evidence shows the
existence of an underground flow of water through
the sand, in any defined or known course, from the
Medano creek to either of the springs from which
the plaintiff made its appropriation of water.   When
the Medano emerges from its canyon it flows in a
southwesterly direction in a well-defined channel for
about a mile and a half, where the channel widens so
that three miles above Mosca creek the stream bed
is about six hundred feet wide and below Mosca creek
it widens to eleven hundred feet.   The water usually
disappears in the sand before reaching Mosca creek,
but when the water is very high it flows on the sur-
face to about the point indicated on the map.

Former state engineer Green testifies that there is
no apparent loss in volume until the channel of the
creek widens.

There is no point in the course where the water
disappears with a current, and it all disappears at
varying distances of from three to seven miles from
the plaintiff's springs.   Even if it be assumed that a
considerable portion of the water from the Medano
makes its way to the Big Spring by percolation along
an ancient watercourse, it seems to me that that is
merely waste or seepage water, and that the plaintiff
is entitled to it as such under its prior appropriations
as against any one taking it from the sands; but that
the plaintiff did not acquire the right to have the
water in Medano creek run to waste, and the de-
fendants are, therefore, entitled to use the water from
the natural stream, notwithstanding such use may di-
minish the seepage supply of the plaintiff.

The reasons given by the court for the finding that
the waters of Sand creek do not contribute to the
supply of the Big Spring appear to me to apply equally

to the waters of the Medano.   It is the merest guess-
work to attempt to determine the source of supply
of a spring from comparative elevations and the
quantities of water flowing in different streams in its
neighborhood.

There was evidence that the flow of the springs
diminished after the sinking of artesian wells and
before the defendants took water from the Medano.
I think it might well be true that the water-table
which supplies the artesian wells also supplies the
springs, and that the artesian wells affect the springs
more directly than the Medano creek does.

A copy of plaintiff's exhibit "C," which I have at-
tached hereto, will show more accurately than any
written description the points in controversy in this
case.

The principal elevations necessary to an under-
standing of the map are:  Big Spring 7,909.32 ft.,
Little Spring 7,897.42 ft., Medano creek at point due
east from Big Spring 8,450 ft., Medano creek at point
due east from Little Spring 8,100 ft., Sand creek
(Rito Arena) at point northwest from Big Spring
7,960 ft.

*On petition for rehearing.*

*Per Curiam.*—It is claimed that in passing upon the effect of the decree in the adjudication proceedings, we overlooked that defendants were not parties to these proceedings. No error was assigned on the admission of the decree. Whatever objection the defendants may have had to its admission in evidence was, therefore, considered as waived, and the decree treated as having been admitted without objection.

Petition for rehearing denied.