## No. 11,696.

### HEIL *v.* HUBBELL, ET AL.

Decided January 10, 1927. Rehearing denied February 21, 1927.

Plaintiff in error was committed to jail for contempt.

### *Affirmed.*

### *On Application for Supersedeas.*

1. CONTEMPT—*Review.* The Supreme Court in reviewing contempt judgments will not inquire further than to ascertain if the trial court had jurisdiction and regularly pursued applicable practice and procedure.

2. *Review—Sufficiency of Evidence.* In reviewing contempt judgments the Supreme Court will not pass upon the sufficiency of the evidence to justify the sentence imposed.

3.  JUDGMENT—*Attack.* A consent decree, being a final order of court ac-
    quiesced in by both parties, may not be assailed directly or indirectly
    on review two years and three months after entry by the trial court.

4.  WATER RIGHTS—*Violation of Court Decree.* A party may not defeat a
    consent court decree for the delivery of water to the land of another,
    by changing the conditions and use on his own land; neither can he
    compel the opposing party to construct a pipe line to convey water
    which by the decree he was to deliver to the other's land.

5.  COURTS—*Orders—Jurisdiction.* Record reviewed, and the trial court
    held not to have exceeded its jurisdiction in entering a decree con-
    cerning the carriage and delivery of water, and subsequent manda-
    tory orders relating thereto.

6.  APPEAL AND ERROR—*Moot Questions.* Questions, which are neither in
    issue nor involved in the case, will not be considered on review.

*Error to the District Court of Adams County, Hon.
Samuel W. Johnson, Judge.*

Mr. HARRY S. CLASS, Mr. ROBERT E. WINBOURN; for
plaintiff in error.

Mr. C. H. PIERCE, for defendants in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

IN a proceeding commenced by Hubbell against Heil
in the district court of Adams county, the court com-
mitted defendant Heil to jail for contempt in disobeying
its orders. Heil brings the case here for review and
asks for a supersedeas. The parties' names appear here
in inverse order from that at the trial; they will be re-
ferred to as there aligned.

Hubbell, Heil, and one West are neighbors in Adams
county, running fish hatcheries, each of them being sever-
ally engaged in the business of raising fish for the mar-
ket. West's land lies on the south and Hubbell's on the

north, Heil's being midway between the other two. The general flow of the water is toward the north. West is not a party and his rights are not involved. The dispute is solely between Hubbell and Heil, but West is mentioned and will be frequently referred to because of the dispute between Hubbell and Heil over the water after West is through with it, and which then leaving his place, flows through Heil's ditches and fish pools, northerly toward its destination at the Hubbell hatcheries. This is known as "the West water." The water involved comes from an underground supply; an engineers' report discloses that it is developed and collected in numerous wells and trenches, the underflow being also intercepted by open ditch construction; the report also shows that for many years these canals, trenches and wells have created lines of flow, supplying water to the several fish pools and hatcheries involved. The water supply is meagre and requires strict conservation.

Hubbell claims all of the West water after it leaves the latter's place, based on alleged priority and adverse user for more than twenty years. He sued Heil, asking for injunctive relief, charging defendant with enlarging the use of the water and wasting a large part of it by spilling it into a slough or bog, thus depriving plaintiff Hubbell of about one half of his water, to the damage of his fish business. Defendant answered, admitting plaintiff's right to all such West water, but claiming noninterference therewith; defendant also admitted an enlarged use of water, but said it was his own, developed on his own place, and not on West's. However, after the pleadings were settled, the court, on June 21, 1924, by mutual consent of the parties, entered a decree concerning the West water. It provided, among other things, that the defendant Heil should permit to flow on Hubbell's land, the same amount of water which Heil receives upon his place from the West land, at all times and without diminution in quantity. A concrete wall separates the West and Heil tracts, and the decree further provided for the

installation of a weir at or near the West-Heil boundary line, to measure the water in, and for another weir at or near the Heil-Hubbell boundary line, to measure it out to Hubbell; also for screens in the water conduit, to be constructed so as not to interfere with the free fall of the water, free access to be given all interested parties to inspect and clean the screens; each party to have the right at any time to determine the elevation of the water flowing over the weirs; expense of installing and maintaining the measuring devices to be borne by plaintiff. There was no objection made to this decree by either party.

Later, in the same case, at the instance of plaintiff, defendant Heil was cited for contempt for disobeying the order. Upon hearing the cause, defendant was adjudged guilty of contempt, and of depriving plaintiff of half of his water, by wasting it and by changing the locations of his pools, thus diverting it away from its former channels toward plaintiff's hatcheries. Thereupon, on March 13, 1926, the court made another order, supplementary to the consent injunction of June 21, 1924. The supplementary order directed defendant to forthwith resume and fill with water, a certain pool on defendant's premises which plaintiff claimed had been dried up, causing water to be drawn away from plaintiff; also to increase the height of the walls of a new pool recently constructed by defendant, so that all water impounded therein would flow into a lower pool, and thereafter northerly upon the lands of the plaintiff. The supplementary order further commanded defendant to operate the pools on his land so that there would be a continuous and regulated flow of water delivered on plaintiff's lands; that defendant should place gates between his place and plaintiff's premises, and also between defendant's and West's premises, for the access of plaintiff, and that defendant should permit plaintiff to clean the screens on defendant's lands. On April 23, 1926, commissioners, the engineers above referred to, were ap-

pointed by the court, by mutual consent of Hubbell and Heil, for the purpose of carrying out the decree of June 21, 1924; they filed their report, which was objected to by defendant; the court adopted it in part, and on June 1, 1926, another final order was made, similar to that of March 13, 1926, but with fuller details, in which matter defendant was again found guilty of contempt, of wasting water, of building new pools and lowering the water levels to the detriment of plaintiff, all diminishing plaintiff's water supply. Defendant Heil was ordered committed to jail until he complied with the court's order, and Heil comes to us for relief.

1. This court, in reviewing contempt judgments, will not inquire further than to ascertain if the trial court had jurisdiction and regularly pursued applicable practice and procedure. *Guiraud v. Nevada Canal Co.*, 79 Colo. 289, 245 Pac. 485. We do not pass upon the sufficiency of the evidence to justify the sentence imposed. *Clear Creek Power and Development Co. v. Cutler*, 79 Colo. 355, 245 Pac. 939. We further held, in *People v. Burke*, 72 Colo. 486, 212 Pac. 837, 30 A. L. R. 1085, that jurisdiction in its fullest sense, is not restricted to subject matter and the parties; that if the court exceeds its jurisdiction, the judgment is open to attack, and that the court is limited in its modes of procedure, and in the extent and character of its judgments.

Applying the above principles to the case at bar, the measure of the rights of both parties is contained in the decree of June 21, 1924, and calls for a comparison between it and the subsequent supplementary orders in the same case, to ascertain if the court did, by such subsequent orders, exceed its jurisdiction in the premises.

2. There are more reasons than one why we must accept the June 1924 consent decree as determining the rights of the parties. It was a final order, entered some two years and three months before the case was brought here for review; it defined the parties' rights and is res judicata; they both acquiesced in it, then and thereafter,

the last time in their common agreement for the appointment of commissioners to see that the decree should be carried out. It is too late now for defendant to assail it, directly or indirectly.

3. The outstanding feature of the above decree is that defendant shall permit the same amount of water to be measured out to Hubbell from Heil's land, as is measured into the latter's place from the West tract, undiminished in quantity. All other orders are merely in support of, and subsidiary to, this main object. It does not appear what allowance, if any, is to be made for seepage, or other legitimate loss or diminution in quantity, beyond defendant's control, in the passage of the water over his land to plaintiff's hatcheries. No such question is involved, but in any event, the agreement and court order forbid Heil from doing anything to lessen Hubbell's supply. It is to be remembered that certain lines of flow had been created by many years use of the water, at certain places, and by canal construction, supplying water to the hatcheries involved. Defendant cannot avoid his agreement, and defeat the decree by altering these lines, thus impairing plaintiff's vested right to obtain his water in the manner theretofore practiced, nor is it possible for defendant to force plaintiff to build a pipe line at plaintiff's expense, over defendant's land, which the latter now proposes, for plaintiff to get water heretofore carried through defendant's pools and ditches. Obviously, also, defendant cannot be permitted to diminish plaintiff's supply by defendant's enlarging his own use, nor by wasting water, but this is what the record shows defendant attempted, and the trial court rightly undertook to correct the evil.

4. Defendant's counsel thinks that the trial court exceeded its jurisdiction by issuing subsequent mandatory orders, whereas, counsel says, the original order was only prohibitive, or a restraining injunction. As to the words in the first order, ''That the defendant shall permit to flow upon plaintiff's lands  *  *  *   the same

amount of water which defendant receives upon his land from the land of Stella E. West * * *,'' it is unnecessary to say whether such words are restraining or mandatory, or to dwell on the difference, if any, in their ultimate effect as applied to the facts before us. The point is that in either case, the order was violated, and the thought cannot be entertained that defendant can defeat plaintiff's rights by violating the decree, or that courts are so impotent that they cannot order the restoration of a condition, i. e., the former line of the stream flow, interrupted by defendant's active violation of the court's former order. If it be attended with inconvenience to defendant, it was of his own making.

The judge of the trial court viewed the premises at least twice; he also had before him the engineers' report. The order for defendant's commitment was not issued except as a last resort, after defendant's repeated violation of the injunction. The court did not exceed its jurisdiction, nor was there any arbitrary exercise of its powers. Any request for a modification of the details of the order, consistent with plaintiff's rights to the West water, should be addressed to the trial court.

5. Counsel for Heil discusses questions of rights in underground waters, and cites C. L. 1921, § 1637, in support of Heil's claim to seepage or spring waters first arising on his land. The citation, however, is not in point. Heil's rights to such waters are neither disputed, nor in issue; it is the West water only that is involved. The novelty and importance of the subject of underground waters cannot be gainsaid. The case before us, however, does not present any question of statutory construction; it concerns the parties' mutual agreement as to plaintiff's rights to the West water, and the orders of the court, made pursuant thereto. No useful purpose can be accomplished by digressing from the issues and passing on matters not involved.

The supersedeas is denied and the judgment affirmed.

Mr. Chief Justice Allen not participating.