# No. 12,766.

## FADEN ET AL. *v.* HUBBELL ET AL.
(28 P. [2d] 247)

Decided May 1, 1933. Original opinion adhered to December 22, 1933.

Mr. Harry S. Class, Mr. Jacob V. Schaetzel, Mr. William R. Kelly, for plaintiffs in error.

Mr. James A. Marsh, Mr. A. L. Betke, for defendants in error.

*En Banc.*

Mr. Chief Justice Adams delivered the opinion of the court.

William L. Hubbell, Viola G. Hubbell, F. L. Riser and F. O. Riser, hereinafter called plaintiffs, brought suit

against Charles Faden, Lester Warwick, Cecile Orrock Warwick and Andrew J. Heil, hereinafter called defendants. The purpose of the suit was to have the latter enjoined from changing their place or manner of diversion of certain underground waters from a higher to a lower water level in water district No. 2, in a way that plaintiffs claim interfered or would interfere with the gravity flow of water to the fish ponds of the latter. Injunctive relief, both restraining and mandatory, was awarded against defendants, and they prosecute error to review the judgment.

The parties named are neighbors, severally engaged in the business of raising fish for the market. Lack of sufficient water for fish cultural purposes has led to frequent disputes. An account of another controversy over the same water supply between Heil and the Hubbells, who are also parties to the present record, is reported in the case entitled *Heil v. Hubbell*, 80 Colo. 452, 252 Pac. 343. The district court there adjudged Heil guilty of contempt for disobeying its injunction commanding him to desist from interfering with the Hubbell rights, and we affirmed the judgment. The land and water rights mentioned in the above opinion as belonging to one West, have since been acquired by the Warwicks. The Risers, Faden and the Warwicks were not parties to that suit.

The parties' lands and the fish hatcheries and pools thereon are situate in Adams county, about five miles north of the city of Denver, west of the Brighton road, on the easterly side of the South Platte river. They are located as follows, beginning at the south and extending northerly: First, Faden's land; next, north, and adjacent thereto is the Warwick place. Similarly continued toward the north lies Heil's land, then the Hubbells' and then Riser's, being five tracts in all. They were formerly embraced in one farm, owned by James Broadwell, from whom all of the parties deraign their several titles.

Various portions of the old farm have been used for fish culture for about forty years; it is particularly

adapted to this enterprise. The water involved is spring and seepage water; it is described by the trial court as having its origin in rain and snow, and from waste and irrigation water, seeping from canals, percolating into the soil over an area of several hundred acres immediately southeasterly of the parties' lands in a gravel bed' beneath the surface, without well defined open channels, and making its appearance along the bluff at different places. The general direction of the flow is northerly, through the Faden, Warwick, Heil, Hubbell and Riser lands; they utilize it successively in the order named. The water is captured and raised to the surface chiefly by means of open ditches, trenches and wells. The supply, even under the most favorable circumstances, is very meagre; it amounts to about only one second foot, which multiplies its duty. It demands strict conservation and constant use and reuse without diminution in time, quality or quantity in order to adequately supply the needs of all who are lawfully entitled thereto for the above useful purpose. Its use is nonconsumptive, and after its application as above described, it eventually finds its way to the South Platte river as one of its sources of supply. The court observed that this subterranean water flows somewhat like a stream, and that this condition has existed from time immemorial, indicating his reasons for such conclusion.

The boundaries of water district No. 2, in which the parties' lands are included, are defined in section 1843, C. L. 1921. This district extends through portions of the City and County of Denver and Adams county; also through portions of other counties not here involved. The Denver district court (formerly included in Arapahoe county) first acquired jurisdiction for statutory adjudications of priorities of right to the use of water for beneficial purposes in water district No. 2. Since then, and long before this action was commenced, that court awarded numerous priorities, among which is one to the plaintiffs Hubbell and another to the defendant Faden.

Both decrees were made in the year 1924. The Hubbells' decree is fish culture priority No. 1, to date from *May 1, 1907,* for one second foot, taking its supply of water from the underflow tributary to the South Platte river in Adams county. Faden's decree covers fish culture priorities Nos. 2, 3, 4 and 5, with dates and amounts as follows: *January 1, 1903,* 1 s. f.; March 1, 1910, .275 s. f.; November 1, 1919, 1 s. f.; November 7, 1922, .75 s. f.; and November 7, 1922, a conditional decree for not exceeding 1.75 s. f. The Faden decree recites that his system "takes its supply of water in Adams county, from springs and seepage arising and collected along the course of its branches." It further declares: "All the above is exclusive of such rights as claimants may have by virtue of ownership of the land from which the water arises and does not purport to determine the question of right to use of the waters based on their arising out of the land owned by claimant." No statutory decrees other than those of Hubbell and Faden are in evidence, but the other parties claim rights for similar purposes by virtue of appropriations which have not been thus adjudicated. As between Heil and Hubbell, there is a prior decree (which we confine to those parties) known as the "consent decree," entered in the year 1924, and followed in 1926 with a supplementary order. They were both made in an independent equity suit in the district court of Adams county, which is more fully discussed in *Heil v. Hubbell, supra.*

The complaint in the present case declares, inter alia, in substance, that plaintiffs and their grantors have continuously used the water for domestic purposes, as well as for fish culture, for more than forty years prior to the commencement of the action; that they have no other available supply; that its use in the direction and manner above indicated has created lines of flow to the various hatcheries involved; that any change will curtail and destroy the water supply thereto; that it is necessary to maintain the water levels as they have been

maintained for forty years past, but that the defendant Faden caused to be excavated a deep trench, to be used in conjunction with other new or deepened trenches and pools of the other defendants, the effect of which will be to change the lines of flow, reduce the water levels, deprive plaintiffs of their water supply, and destroy their fish industries, upon which they have expended many thousands of dollars; also that defendants threaten a continuance of their unlawful acts. Plaintiffs further claim that defendants promoted a company known as Rocky Mountain Trout Incorporated (a concern headed by the defendant Faden as president), which would receive a poundage on all trout marketed, and that because plaintiffs refused to join, defendants undertook to put the former out of business by ruining their water supply. The defendants deny such motives. They assert that circumstances beyond their control, i. e., abnormally dry years and the pumping of water for irrigation by third parties on other lands in the neighborhood, had reduced the water table to such an extent that some of the parties, including the plaintiffs Hubbell, and the defendants Heil and Warwick, were compelled to dig their own pools deeper to make up for the diminished supply on the higher level.

The defendants filed separate answers containing general and specific denials; they separately assign error. Faden raises special defenses, some of which are repeated by the other defendants, namely: (a) That the district court of Adams county has no jurisdiction because the district court of the City and County of Denver first acquired jurisdiction in statutory adjudications of water priorities in water district No. 2; (b) misjoinder of parties; (c) the water involved arises on Faden's own land, he declares, and is therefore his own; (d) plaintiffs have no right by appropriation or otherwise cognizable by the court.

The evidence in some respects was conflicting but plaintiffs' allegations were proven in material particu-

lars. General and specific findings were in plaintiffs' favor. The findings are silent with reference to plaintiffs' charge concerning the trout company, as to which evidence was introduced, but the court enjoined Faden from further digging his ditch and commanded him to fill it up. It enjoined all defendants from reducing the water levels and ordered them restored.

Points for discussion as reflected in the assignments of error will be taken up in the following order: (1-5) Jurisdiction; (6) joinder of parties; (7) initiation of defendants' rights—appropriations for fish cultural purposes as a beneficial use; (8) underground waters and water first arising on plaintiffs' lands; (9) rights of junior appropriators.

1. Defendants' objection to the jurisdiction of the district court of Adams county over the subject matter is not tenable. It is true that the district court of the City and County of Denver first acquired jurisdiction *to adjudicate priorities* of right to the use of water for beneficial uses in water district No. 2, and thereby continues to retain exclusive jurisdiction *for such purpose. Weiland v. Reorganized Catlin Canal Co.,* 61 Colo. 125, 129, 156 Pac. 596; *Louden Irrigating Canal Co. v. Handy Ditch Co.,* 22 Colo. 102, 43 Pac. 535; *Hazard v. Bowles Reservoir Co.,* 87 Colo. 364, 287 Pac. 854. Such decrees are not subject to collateral attack. *Consolidated Home Supply D. & R. Co. v. Town of Evans,* 59 Colo. 482, 484, 149 Pac. 834; *Hazard v. Bowles Reservoir Co., supra.* But as will be presently seen, there is no conflict of jurisdiction when the objects sought by the two courts were separate and distinct, indeed, when the present suit for an injunction was to attain an objective which could not have been accomplished in the statutory adjudication.

2. The exclusive jurisdiction acquired by the district court of Denver pertained solely to the statutory adjudication of priorities of water rights for beneficial purposes under C. L. 1921, sections 1752, 1756, and concomitant sections. That adjudication did nothing more,

and any attempt to do more would have been extra-judicial. *Haines v. Fearnley,* 56 Colo. 243, 246, 138 Pac. 541. The subject matter of the present suit is different; it is not to adjudicate water rights under the statute, but to protect them. It amply appears from the findings and decree herein, as well as from the evidence, that the effect of this judgment is not to modify or impair existing decrees, either by enlarging or diminishing them; it leaves them just as they were without interference; hence, the fact that adjudication proceedings had taken place in the district court of Denver did not preclude the district court of Adams county from assuming jurisdiction in an independent suit by plaintiffs to protect their rights in regard to matters not adjudicated by the former decree, and arising subsequent thereto. Weil on Water Rights (3d Ed.), p. 1137; *Medano Ditch Co. v. Adams,* 29 Colo. 317, 329, 68 Pac. 431; *Buckers Irrigation, M. & I. Co. v. Farmers' Ind. D. Co.,* 31 Colo. 62, 73, 72 Pac. 49.

3. There is another contrast between the statutory proceedings in Denver and this subsequent suit in equity, brought and determined in Adams county. The trial court found in the present suit that the waters involved in the two cases are not the same, and defendants' evidence contributes to this conclusion. They contend that such waters arise on their own lands, but the Faden decree awarded in Denver in 1924 (the only statutory adjudication upon which defendants rely) expressly declares that it does not purport to determine the question of right to waters thus arising. This adds emphasis to the difference in the subject matter engaging the attention of the two courts.

4. Our opinion, written by Mr. Justice Campbell, in *Hazard v. Bowles Reservoir Co., supra,* points out clearly some of the things that the second court cannot do when the effect is to construe and interpret a statutory decree out of existence. At page 366 of that opinion in the 87th Colorado reports, it is said: "This decree of the Arapahoe district court is not one that merely maintains

the status quo as to these two priorities, but it radically changes the same and enters a new and different decree from that which was pronounced by the district court of Douglas county." And continued on page 368 of the same opinion: "* * * in effect, set it aside, nullified it, and absolutely deprived the defendants of the right to use any of the water, in any circumstances, impounded in the Bennet reservoir." We reversed the above judgment, but in the instant case, the status quo is not disturbed; it is restored as to the manner of use, i. e., the elevation of water conduits, so that all parties can enjoy the use of the water as it existed before, at the time of, and after the statutory adjudication was entered. It seems perfectly apparent to us that even if the waters involved were actually the same, the present judgment does not dishonor the former adjudication.

As we have repeatedly declared, the language of any opinion must be construed in the light of its own facts. This is applicable to the Hazard v. Bowles case from which we have just quoted. Of course it is necessary for any court, in considering a plea of a former adjudication, aside from the question of parties, to read and interpret such former decree, to the extent, at least, of determining what it is about or the identity of the subject matter, and what the holding was, in order to ascertain its relation to the case in hand. If this privilege of enlightenment be denied the second court, a plea of almost any kind of prior action might serve as a bar. For example, an inapplicable plea of res judicata might readily defeat an injunction against the wrongful diversion of waters at a different place or at another water level, or even of waters which were not those specified in the statutory adjudication. In other words, a different decree from the one pleaded and proven. From a comparison of the present facts with the former adjudication, it would seem that if anyone is now seeking its modification, the defendants themselves, and not plaintiffs, are unsuccessfully attempting it in one or more of the above

respects. At least, defendants rely upon an earlier adjudication of priorities, the designated use whereof is inconsistent with the way in which they now purpose to divert the water to plaintiffs' injury. The judgment under review does not permit the integrity of the former adjudication to be thus impaired. If anything, the present order is in aid of the former adjudication.

5. As indicated in *Medano Ditch Co. v. Adams,* and *Buckers Irrigation, M. & I. Co. v. Farmers' Ind. D. Co.,* above cited, the statutory decree in water district No. 2 did not give the district court of Denver a monopoly forever after to determine every other conceivable question that might later arise pertaining to the infringement of water rights in that water district, as to matters not interfering with the former decree. If no other court were permitted to examine or construe it at all for any purpose, it would seriously abridge its usefulness. It would, for illustration, make it impossible to correlate decrees, or carry out the rule that adjudications of water rights in different water districts, but in the same water division shall be construed as a whole, for this could not be done under the novel practice proposed unless the same court happened to determine the rights in each water district. That is to say, one court could not tell what the other had done. Instances of evil results that would follow might be multiplied, but it is unnecessary. The district court of Adams county acted within its jurisdiction.

6. Defendants plead misjoinder of parties, particularly for the reason that the lands and water rights involved are owned or claimed in severalty. Plaintiffs, however, have an interest in the subject of the action and in obtaining the relief demanded. They were therefore properly joined. Section 10, Code 1921; *Brown v. Farmers High Line C. & R. Co.,* 26 Colo. 66, 71, 56 Pac. 183. And defendants have or claim an interest in the controversy adverse to plaintiffs, and are necessary parties to a complete determination of the questions involved. De-

368

fendants were therefore properly joined. Section 11, Code 1921; *Brown v. Farmers Co., supra.* Regardless of titles in severalty, the main question relates to an indivisible system of water distribution directly affecting the rights of all parties. Their claims are so interrelated, that one suit is the place to settle them all.

■ 7. Little need be said as to the derivation of plaintiffs' water rights. They are challenged, but they were acquired in the same lawful manner in which defendants acquired theirs, namely, by appropriation. The facts, as pleaded and proven, bring them within the meaning of the word. Definitions of the term will be found in *Fort Morgan L. & C. Co. v. South Platte D. Co.,* 18 Colo. 1, 4, 30 Pac. 1032; and *Windsor R. & C. Co. v. Lake Supply D. Co.,* 44 Colo. 214, 217, 98 Pac. 729. It is self evident that water diverted and employed for the propagation of fish is devoted to a useful purpose, and all of the parties completed their appropriations of water by its application to the beneficial use designed. As stated above, the use is nonconsumptive, and no rights other than those for fish culture are involved.

■ Prescriptive rights are discussed in the briefs, but we are not concerned with them. In order to finally consummate a right by appropriation, no specific time is required. 2 Kinney on Irrigation (2d Ed.) 1854. Reasonable diligence in conjoining the intent with the application to a beneficial use is sufficient. These elements are not lacking in the acts of any of the parties to this suit.

■ 8. Underground waters. Plaintiffs and defendants meet upon an equal plane in another respect; they all procure their water from underground sources; hence, whatever is said generally of the rights of one party in this regard is applicable to the other parties. True, defendants argue that under section 1637, C. L. 1921, they are entitled to the water first arising on their own lands, to do with it as they choose, unaffected by the doctrine of appropriation. But, as stated above, the waters in question feed the South Platte river, and what-

ever might be said if this were not the case, we are committed to the rule that subject to prior appropriations, underground waters supplying a natural stream are open to appropriation like surface waters, because they belong to the river. We so held in construing the above section of the statute. *Nevius v. Smith,* 86 Colo. 178, 279 Pac. 44. That opinion disposes of any supposed inequality of right based upon the underground sources of the water supply. See also *La Jara Creamery & L. S. Ass'n v. Hansen,* 35 Colo. 105, 83 Pac. 644; *Medano Ditch Co. v. Adams, supra; McClellan v. Hurdle,* 3 Colo. App. 430, 33 Pac. 280. Numerous cases from other jurisdictions are cited, but we need not review them when our own are adequate.

9. Injunction lies to restrain the wrongful diversion of water away from those who are lawfully entitled thereto. *Olney Springs Drainage District v. Auckland,* 83 Colo. 510, 516, 267 Pac. 605. Even if it be conceded that defendants' rights are senior in point of time, the date of a priority is only one of its incidents. A junior appropriator of water to a beneficial use has a vested right, as against his senior, in a continuation of the conditions on the stream as they existed at the time he made his appropriation. *Baker v. City of Pueblo,* 87 Colo. 489, 491, 289 Pac. 603; *City and County of Denver v. Colo. Land and Livestock Co.,* 86 Colo. 191, 193, 279 Pac. 46.

The waters in dispute are drawn from an interdependent supply, extending over a wide area beneath the surface of the lands of the parties and other lands. It is not difficult to see that when defendants reduce their water levels, it may redound to their convenience and advantage, and afford them better assurance of a steady supply, but the corresponding loss to plaintiffs militates against the change.

The trial court did not, nor do we, find it necessary to inquire into the motives that actuated defendants. Regardless of such motives, the facts established

were sufficient to warrant the issuance of the injunction, and we find no reversable error.

Judgment affirmed.

Mr. Justice Bouck not participating.

Mr. Justice Campbell dissents upon the ground that by our statutes relating to the adjudication of priorities of rights to the waters of our natural streams for purposes of irrigation, only the Denver district court has jurisdiction to determine the issues raised by the pleadings in this case, affecting, as they do, the waters in dispute which, if not interfered with, would reach the channel of South Platte river.