No. 14,703.

DEL NORTE IRRIGATION DISTRICT *v.* SANTA MARIA
RESERVOIR COMPANY.

(113 P. [2d] 676)

Decided April 21, 1941. Rehearing denied May 26, 1941.

2

Mr. JEAN S. BREITENSTEIN, Mr. JOHN G. REID, Mr. JOHN H. SHIPPEY, for plaintiff in error.

Mr. GEORGE M. CORLETT, Mr. CHARLES R. CORLETT, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE Del Norte Irrigation District, plaintiff in error, owns the Continental reservoir. The Santa Maria Reservoir Company, defendant in error, owns the Santa Maria reservoir. Since this proceeding centers on the relative rights of the owners of these reservoirs in the water decreed thereto, we shall for convenience hereinafter refer to the plaintiff in error, as such, or as the Continental, and to defendant in error as the Santa Maria.

As completed in 1913, the Santa Maria, an off-channel reservoir, had a storage capacity of 43,565.06 acre feet of water. There has been no increase in its storage capacity since that time. By successive decrees, the last of which was entered in June, 1924, the Santa Maria has had adjudicated to it 37,524 acre feet as absolute priorities, and 6,302.6 feet in a conditional decree. These decrees are in the regular form used in storage adjudications with no limitations or requirements whatsoever as to diversion or intake volume. Construction on the Continental reservoir, located on the stream above the Santa Maria intake, was commenced in 1924. The reservoir was completed in 1928, the spillway being finished in 1934. To this system, by decrees entered in 1934, there has been awarded 11,389 acre feet as absolute

priorities and 19,361 acre feet conditionally. Although apparently the priority for 8,832 acre feet to the Continental is earlier in date than 21,652.79 acre feet of the 37,524 awarded to the Santa Maria, for the practical purposes of this case and as the parties treat them, the Santa Maria must be considered as the senior appropriator and the Continental as the junior appropriator. As constructed in 1913, the Santa Maria diverted its water from the stream through a pipeline having a diameter of four feet. During the course of the years, in an effort to increase its efficiency, several changes were made in the original intake system, until finally in 1934, the old pipeline was replaced by a new one seven feet in diameter. The latter installation occasioned this controversy, in connection with which the suit here involved was instituted by the plaintiff in error to enjoin the Santa Maria from diverting a greater volume of water from the stream through its new pipeline than had been the alleged carrying capacity of the old; for damages, and to have declared the abandonment of a certain portion of the decreed waters of the Santa Maria. The trial court found against the Continental on all points and to review the resultant judgment it prosecutes this proceeding in error.

Notwithstanding some collateral arguments on this score, the rights of the parties under their conditional decrees as such, are not directly involved in the case at bar, since by its complaint the Continental sought to enjoin the Santa Maria from impounding in excess of 15,781 acre feet of water in any calendar year or diverting in excess of 150 second feet at any one time, and by its answer the Santa Maria limited its claim herein to the right to store to the amount of its absolute decree of 37,524 feet. Further, as explanatory of the state of the record we think it proper to observe that, although the Continental's complaint, in addition to seeking equitable relief, prayed for damages in a large sum, no competent evidence tending to establish damages or fix any

measure thereof was introduced, as a consequence of which the proceeding must be considered as purely a suit for injunctive relief.

■■ In discussing the right of storage by one reservoir as against another, it has been said: "As in the case with other rights acquired under the Arid Region Doctrine of appropriation, the rule of priority governs, and it is held that the reservoir having the prior right is entitled to fill the same first from the flow of the stream to the full extent of the capacity of the appropriation made therefor." Kinney on Irrigation and Water Rights (2d ed.) vol. 2, page 1484, section 845, citing *Church v. Stillwell,* 12 Colo. App. 43, 54 Pac. 395. See, also, *Colorado Milling & Elevator Co. v. Larimer & Weld Irrigation Co.,* 26 Colo. 47, 56 Pac. 185. Thus, fundamentally, the Santa Maria would have the unqualified right to store water to the full extent of its prior appropriation before the Continental, as a subsequent appropriator, lawfully would be entitled to store any water from the common source. Obviously, in this connection, as a primary matter, an off-channel reservoir, that is, one in which the water is carried by artificial means from the source of supply to the place of storage, is in no different position legally than a reservoir located on the channel with an inflow directly from the stream. It is the contention of the Continental that by tolerated stricture in the Santa Maria diversion system, the latter has partially lost the original prior storage rights accorded under this rule. Specifically, as pleaded in its complaint, it was the theory of the Continental that by the long continued failure of the Santa Maria to "divert or to use a greater amount" of water "than the limited capacity" of the inlet pipe and ditch system in use previous to the installation of the new pipeline, it has "abandoned and intended to abandon" all water decreed to it over and above 15,871 acre feet, and that it has lost the right to divert from the stream in excess of 150 second feet at any time.

6

■ Abandonment, as applied to water rights, consists in nonuse of the water coupled with the owner's intent not to repossess himself of such use. Nonuse alone is not sufficient to accomplish the result however, but intention to abandon may be inferred from the clear evidence of a nonuse of available water for an unreasonable time, in the absence of proof of some fact or condition excusing such nonuse. *Commonwealth Irrigation Co. v. Rio Grande Canal Water Users Ass'n,* 96 Colo. 478, 45 P. (2d) 622.

■■ In the case at bar unless intent to abandon may be so inferred, the absence thereof is certain. Under the decrees here involved the only *use* of which the Santa Maria ever was possessed was for *storage* and if anything was abandoned, of necessity that thing must have been *storage rights.* By the same token the only nonuse which could be effective as establishing the overt act of abandonment and as furnishing the basis for inferring the intent thereof, must be a nonuse of *storage,* and not *diversion,* facilities. In other words, here the criterion of use, or the failure thereof, must be applied on the basis of the quantity of water stored for beneficial use and not on the amount of the direct flow volume of the intake. Thus, so long as an off-channel reservoir actually continues to store available water to an extent reasonably consistent with its decrees, it abandons none of its rights and it matters not whether its means of inflow diversion is by ditch or pipeline, large or small, in good condition or bad. The trial court concluded from the evidence, as a matter of fact, that there had been no considerable nonuse by the Santa Maria of its rights of storage in the amounts awarded by its absolute decrees, and stated in this connection: "The testimony shows they (the Santa Maria) had that, close to that amount of water in this reservoir at various times," and it further expressly found that the Santa Maria had not abandoned any of its adjudicated rights. The findings of the court, as will be developed herein-

after, were supported by competent evidence and thus are binding upon us and conclusive of the issue of abandonment in this proceeding.

 Supplementarily, it may be added, as appears from the rule announced in *Commonwealth Irrigation Co. v. Rio Grande Canal Water Users Ass'n, supra,* that to permit the inference of an intent to abandon water from its nonuse, there must be an absence of proof of some fact or condition excusing such nonuse. The presence of a legitimate excuse in the instant case, if such is needed, for the continued use of the debilitated intake system, rehabilitated in 1934, was supplied by the proof of the difficult economic, financial and legal problems of the Santa Maria during the period in question.

 As a further basis for the injunctive relief asked, the Continental seeks to invoke the well established doctrine that a junior appropriator of water has a vested right, as against his senior, in a continuation of the conditions on the stream as they existed at the time the junior made his appropriation. See, *Faden v. Hubbell,* 93 Colo. 358, 28 P. (2d) 247; *Vogel v. Minnesota Canal Co.,* 47 Colo. 534, 107 Pac. 1108; *Trinchera Ranch Co. v. Trinchera Irrigation District,* 83 Colo. 451, 266 Pac. 204. It is said the installation by the Santa Maria of the new intake pipeline of a larger potential capacity than the old one in use when the Continental began its storage, effected a change in conditions on the stream, which makes the rule operative. While it may be doubted whether under the pleadings this question is legitimately involved here, in any event, as a condition to its invocation, an actual impairment or irreparable injury to the legal rights of the junior appropriator must be demonstrated by evidential facts and not by potentialities. Upon this basis, the evidence and findings of the trial court thereon, preclude its availability to the Continental.

Evidence adduced at the trial disclosed that *before the replacement* of the old pipeline the storage in the

Santa Maria reservoir was: "17,821 acre feet prior to 1920, 37,524 acre feet in 1922, 28,400 acre feet in 1927, 33,200 acre feet in 1929 and over 37,000 acre feet in 1930."

According to the Santa Maria storage records the total amount of water stored in that reservoir *since the new pipeline has been installed,* was: "1935 10,345 acre feet, 1936 6,134 acre feet, 1937 16,819 acre feet." Hence, from this evidence it well might be concluded that the water diverted and stored under the *new feeder system* actually was less than capacities which had been attained under the *old.* Further, the evidence introduced by plaintiff in error itself established that in 1935, *the year following the replacement of the pipeline,* 1,250 acre feet were carried over in the Continental reservoir; in 1936, the sales of water therefrom amounted to 1,300 acre feet; and 5,000 acre feet were carried over; on May 1, 1937, 3,310 acre feet were in the reservoir; on April 19, 1938, 1,420 acre feet remained in the reservoir and between 4,000 and 5,000 acre feet were carried over that fall. Contrastingly, *previous to the installment of the new pipeline by the Santa Maria,* the Continental, in 1928, sold 2,500 feet and carried over but a small amount of water; 5,800 feet were carried over in 1929; in 1930, 2,780 feet were sold, the amount of the carry-over not appearing; in 1931, no water was sold or carried over; 6,100 acre feet were in storage in the fall of 1932, and in 1933 about 200 acre feet were sold and 1,600 feet carried over. Thus, considering the annual fluctuations in natural precipitation, it would appear that there existed in the evidence a substantial basis upon which the district court could conclude, as it did, that the Continental had failed to establish actual impairment of, and injury to, its water rights by reason of the rehabilitation of the Santa Maria intake pipeline.

It may be added that as an ordinary incident generally common to injunction suits of this type, where the trial court has found an insufficiency of proof of ir-

reparable injury, which finding has evidentiary support in the record, an affirmance likely should follow in any event. Pertinently, it was held in *Larimer & Weld Reservoir Co. v. Cache la Poudre Irrigation Co.*, 8 Colo. App. 237, 45 Pac. 525, that in this class of cases an injunction will not issue until it is demonstrated clearly and conclusively that a diminution in the water supply to which the party complaining is lawfully entitled is occasioned by reason of the diversion and use to which objection is made.

The judgment is affirmed.

Mr. Chief Justice Francis E. Bouck and Mr. Justice Burke specially concur.

Mr. Justice Burke specially concurring.

I am unable to find anything in the record to justify reversing the finding of the trial court that plaintiff in error has failed to establish any actual impairment of its rights by the enlargement of the diversion works of the defendant company. On that ground alone I concur. Mr. Chief Justice Francis E. Bouck also concurs in an affirmance of the judgment below on the ground above expressed.