No. 16,982.

FARMERS HIGHLINE CANAL AND RESERVOIR COMPANY ET AL. *v.* CITY OF GOLDEN ET AL.
(272 P. [2d] 629)

Decided July 6, 1954. Rehearing denied August 3, 1954.

Mr. DAVID MILLER, Mr. MELVIN DINNER, Mr. GLENN A. LAUGHLIN, Mr. JAMES F. FRIEL, for plaintiffs in error.

Mr. JAMES J. PATTERSON, Mr. GLENN G. SAUNDERS, for defendant in error City of Golden.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

To review a judgment and decree favorable to defendant in error, City of Golden, in an action to change the point of diversion of certain water rights heretofore adjudicated to the Swadley ditch out of Clear Creek upstream a distance of some five miles to the headgate of the Church ditch, plaintiffs in error present the cause in our Court by writ of error. We will herein refer to the parties as they were aligned in the trial court where the City of Golden was petitioner and plaintiffs in error appeared as respondents.

Petitioner claimed ownership of said water rights by recent purchase and conveyance by deed, and sought to have changed, not only the point of diversion, but likewise, the manner of use, said rights having previously been employed under the Swadley ditch in the irrigation of farm lands, and petitioner now seeking to devote the same to municipal uses by way of increase to the domestic supply of water for the City of Golden as well as for the irrigation of lawns, gardens and similar purposes within the city. The trial court granted the petition, and by its decree authorized the change of 0.844 cubic feet of water per second of time under priority number thirteen, dated May 14, 1861, and 0.92 cubic feet of water per second of time under priority number twenty-one under date June 1, 1862, for a total of 1.764 cubic feet of water per second of time.

Respondents set out twelve specifications of alleged error, not all of which will herein be separately discussed. They rely principally upon the contention that the trial court, by its decree, permitted a greatly enlarged use of the water under the aforesaid priorities

than any to which they had ever theretofore been applied; that the court erred in failing to fix reasonable limitations upon the amount of water that the petitioner might use following the change of point of diversion; that petitioner had not sustained its burden of proof by a sufficient showing that the vested rights of protestants would not be injuriously affected by said change; that the trial court had in effect attempted to place said burden upon the protestants to prove injury; that certain findings within the decree and judgment itself are inconsistent and conflicting; that the judgment of the court is contrary to the law and the evidence; that certain other appropriators of water through the Swadley ditch are necessary and indispensable parties and should have been specifically made parties to this proceeding; and that the City of Golden has wholly failed to prove any title or ownership of the water rights sought to be transferred.

 Considering the last two items first, there was no error on the part of the trial court in denying respondents' motion to require other users from the Swadley ditch to be made actual litigants, it appearing that the proceeding was had pursuant to statutory direction; that due and proper notice had been given; hence all users of water affected by said proceeding were, in effect, parties and had full right to protect their rights had they so desired. Concerning the matter of ownership, petitioner presented a deed purporting to convey to it the water rights involved, and such is evidence of prima facie ownership. Proceedings of this nature are not adaptable for the purpose of trying title.

With respect to the facts, the parties hereto are in complete disagreement, and the evidence, limited and inadequate, as to us it seems to be, is in serious conflict. With respect to many legal issues, counsel for the respective parties are quite in accord. It is recognized that water is a property right, subject to sale and conveyance, and that under proper conditions not only may the point

of diversion be changed, but likewise the manner of use. It further is recognized that such change may be permitted, by proper court decree, only in such instances as it is specifically shown that the rights of other users from the same source are not injuriously affected by such change, and that the burden of proof thereof rests upon petitioner. These principles have been enunciated by our Court time and again in many decisions. Here, there appears no disagreement as to the law, but a wide divergence of theory in its applicability.

■■ There is absolutely no question that a decreed water right is valuable property; that it may be used, its use changed, its point of diversion relocated; and that a municipal corporation is not precluded from purchasing water rights previously used for agricultural purposes and thereafter devoting them to municipal uses, provided that no adverse affect be suffered by other users from the same stream, particularly those holding junior priorities.

■ Equally well established, as we have repeatedly held, is the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations, and that subsequent to such appropriations they may successfully resist all proposed changes in points of diversion and use of water from that source which in any way materially injures or adversely affects their rights. *Baer Brothers Land & Cattle Co. v. Wilson,* 38 Colo. 101, 88 Pac. 265; *Vogel v. Minnesota Canal & Reservoir Co.,* 47 Colo. 534, 107 Pac. 1108; *Denver v. Colorado Land & Livestock Co.,* 86 Colo. 191, 279 Pac. 46; *Baker v. Pueblo,* 87 Colo. 489, 491, 289 Pac. 603; *Farmers Reservoir & Irrigation Co. v. Town of Lafayette,* 93 Colo. 173, 24 P. (2d) 756; *Faden v. Hubbell,* 93 Colo. 358, 369, 28 P. (2d) 247; *Del Norte Irrigation District v. Santa Maria Reservoir Co.,* 108 Colo. 1, 7, 113 P. (2d) 676. See, also, *Comstock, State Engineer v. Ramsey,* 55 Colo.

244, 257, 133 Pac. 1107, where many earlier decisions are cited.

■ ■ All appropriations of water, and all decrees determining the respective rights of users, regardless of whether specific mention be made therein, are subject to all constitutional and statutory provisions and restrictions designed for the protection of junior appropriators from the same stream. Where decrees are silent in this respect all such limitations, conditions and restrictions are read into every such decree by operation of law. *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 989; *Fort Lyon Canal Co., v. Chew,* 33 Colo. 392, 81 Pac. 37; *White v. Nuckolls,* 49 Colo. 170, 112 Pac. 329; *Baker v. Pueblo, supra,* quoted from and cited with approval in *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.,* 116 Colo. 580, 585, 183 P. (2d) 552, wherein, immediately following such quotation, Mr. Justice Stone declared the principle that the owner of a priority for irrigation has no right, as against a junior appropriator, to waste water, to increase the amount or extend the time of his diversion so as to put it to double use by irrigation of other lands; nor to lend, rent or sell to others the excess water. "The well-recognized right to change either the point of diversion of the water right or its place of use is always subject to the limitation that such change shall not injure the rights of subsequent appropriators." *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co., supra.*

The trial court, by its decree, declared petitioner to be the owner not only of the two priority rights hereinabove described, but likewise priority number forty-four, dated May 16, 1865, for 0.625 cubic feet of water per second of time through the Swadley ditch; that none of said water rights had been abandoned, nor had any part thereof, and that, "In the light of all the evidence it appears that Clear Creek, when viewed generally as a source of supply for numerous water rights, will not be injured by the granting of the requested change of point

of diversion; but that if any injury were present it is a general injury, rather than an injury to any particular water right of any of the protestants. * * * The bulk of the evidence bearing on the question of supposed injury during the growing season had to do with injury to Clear Creek generally, rather than with reference to injury to any particular water right, as appears to be required under the Englewood case, supra, once the petitioner has established a prima facie case." We shall return to this topic later, and now refer to the portions of the decree which respondents claim are inconsistent and confusing within themselves.

Under subhead (d) of its findings, the trial court stated that it was convinced that, under no tenable theory of the case would any injury be done if 1.2 cubic feet of water per second of time out of priorities thirteen and twenty-one were allowed to be transferred, as requested by Golden. Then, under subdivision (e), the trial court "determined to authorize the change of point of diversion of Golden's priorities numbered thirteen and twenty-one, but effectuate the relinquishment of its priority number forty-four." True, under subhead (d) of its findings, the trial court further stated that it was not persuaded that water rights of any users appearing as protestants would be injured by granting decree for the full amount of all three priorities, but it specifically found that no injury would result if the diversion point of 1.2 cubic feet of water per second of time were authorized to be changed, and then proceeded to change the whole of the two oldest priorities for 1.764 cubic feet of water per second of time. This inconsistency of itself would be sufficient to justify a remand of the cause to the trial court for correction, but there appears a far more urgent necessity for reversal. As we have hereinbefore stated, the evidence presented before the trial court is conflicting and from our standpoint not altogether satisfactory. The principal witness who testified in behalf of the petitioner was one Wheeler, an engineer;

while the principal witness who testified for protestants was one Lowe, likewise an engineer. Their testimony primarily was based upon two conflicting statistical theories. Mr. Wheeler using the Lowry-Johnson method, and Mr. Lowe the Blaney-Criddle method. The testimony of Mr. Wheeler was considerably more favorable to petitioner than was that of respondents' engineer; nevertheless, Mr. Wheeler testified that in his opinion there might be permitted, without injury to the stream, a change of point of diversion for 1.2 cubic feet of water. An effort was made to have him enlarge upon that amount, but he would not so commit himself other than to say that if an amount were transferred in addition to 1.2 cubic feet of water per second of time the effect on the stream would be so infinitesimal that it could not be measured. Mr. Wheeler's testimony was the extreme of all testimony before the court, both as to acreage irrigated under these decrees from the Swadley ditch, and the amount thereof for which point of diversion might properly be changed without injury to junior appropriators.

Regardless of this, the trial court, with no evidence whatever to support him, presumed to enter a finding that no injurious effect would result if the entire amount of the two older priorities, aggregating 1.764 cubic feet of water per second of time, was transferred, and that if any injury did result therefrom, it would be a general injury and could not affect any of the respondents specifically. The fallacy of such presumption is readily apparent. When any injury is permitted under the assumption that it is general to the stream, it immediately becomes clear that such instances multiplied might become very serious. Where general injury would result to the stream by the transfer, the change could not be authorized without injury to junior appropriators because it is their rights, proportionate with senior rights, that consume the whole stream.

Incidentally, in passing, the trial court further decreed

that priority number forty-four for 0.625 cubic feet per second of time, notwithstanding it held same to be the property of Golden, shall not hereafter be "taken or diverted for any purpose whatsoever." It did not declare an abandonment of that priority, nor did it base this portion of its decree upon any theory of limitation or condition upon the rights of the City of Golden by reason of the change of use and diversion sought. The decree is technically erroneous, because, if that water belongs to the City of Golden, it has the right to use it. It must either be declared forfeited, abandoned, or its use prohibited as a limitation on account of the change.

We heretofore have mentioned that the evidence appears to us to be unsatisfactory. This primarily is from the fact that the chief witnesses were the two engineers, and they were testifying according to statistical data covering the entire drainage area. There even is a conflict as to the number of acres irrigated by the petitioner's grantors under the Swadley ditch, which, after making all allowances in petitioner's favor, could not have exceeded a maximum of forty-eight acres. The water had not been measured, and there were no records as to volume at any time in the Swadley ditch. There is no testimony in the record by which one might assume that the particular acreage irrigated by the Swadleys was any different from many other acres irrigated by waters diverted from Clear Creek. There is no particular evidence in the record that the Swadley lands required more water than other lands in that drainage area. Yet 1.2 cubic feet of water per second of time is considerably more water than other lands received and, in the absence of peculiar and unusual conditions, it would seem to us to be an excess supply for forty-eight acres. On behalf of petitioner it is contended that the Swadleys used seventy inches of water, which approximates 1.823 second feet. That contention is based altogether upon the testimony of George Swadley who said that he "imagined" that they used about seventy inches; and

that with such a head of water, he could irrigate a seven-acre tract in a twenty-four hour period. On that basis it would seem that the entire forty-eight acres could be irrigated once a week. In the absence of peculiar or unusual circumstances — none such appearing in this record — no necessity would appear for such frequent irrigation. If not irrigated once a week, that supply of water remained in Clear Creek a considerable portion of the time. If the change be permitted for the whole amount decreed, the use will be much more constant and the ultimate consumption correspondingly greater.

■ Petitioner contends, however, that it is entirely within the right of an appropriator of water to enlarge upon his use, and now that the City of Golden is the owner, it may enlarge upon the use to the extent of the entire decree. Counsel for petitioner here confuse two altogether different principles. This doctrine even on behalf of an original appropriator, may be applied only to the extent of use contemplated at the time of appropriation. It has no application whatever to a situation where a decree is sought for change of point of diversion or use. There the right is strictly limited to the extent of former actual usage. "The right to change the point of diversion is, of course, nonetheless a qualified right because petitioner acquired it by purchase." *Fort Lyon Co. v. Rocky Ford Co.*, 79 Colo. 511, 515, 246 Pac. 781.

■ ■ Although the expression "Duty of Water," in the opinions of some present-day scholarly hydrologists and technical engineers, may be outmoded, provincial, unscientific, and otherwise objectionable, nevertheless it is a term well understood and accepted by every rancher and farmer who has had practical experience in the artificial irrigation of land for the production of crops. It is that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum

amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions. In their briefs, counsel for respondents refer to the case of *Trinchera Ranch Co. v. Trinchera Irrigation District,* 83 Colo. 451, 459, 460, 266 Pac. 204, asserting that we therein set up standards of evidence in such type of cases. These were not intended as essential elements of proof, but only as suggestions of matters properly to be considered in determining the duty of water. Land characteristics at the place of use are important; location; slope; depth of soil; whether it is loose or close; if underlain with gravel or impervious material; its composition and general adaptability for the growing of irrigated crops; all are taken into consideration. Climate is a feature not to be overlooked, as also are the kinds of crops ordinarily grown thereon and the proportion of the area devoted to each type of crop and the rotation thereof. In fact, every element that concerns or affects the consumption of water in the particular case before the court is to be considered. In matters concerning change of point of diversion, it is the gauge by which volume of prior use is determined. Where the entire amount fixed by the decree was reasonably required in the proper irrigation of the lands to which first applied, then the whole priority properly may be changed for similar usage; but where such irrigation did not require the entire volume of the decree, then only that portion may be changed which previously had been necessary for proper irrigation. It is not a question of whether the amount of water decreed was adequate, but whether it was excessive. The extent of needed use in original location is the criterion in considering change of point of diversion. This, of course, is premised upon the assumption that whatever of the decreed water was not properly used remained in the stream.

In addition to the duty of water in change of point of diversion cases, due consideration also must be

had with the amount of return flow, both before and after the change, that the stream may remain as it was, and not suffer depletion, nor yet that the user at the point of changed location be obliged to add thereto. The first is not permissible and the latter not required.

■■■ Where it appears that the change sought to be made will result in depletion to the source of supply and result in injury to junior appropriators therefrom, the decree should contain such conditions as are proper to counteract the loss, and should be denied only in such instances as where it is impossible to impose reasonable conditions to effectuate this purpose. *Colorado Springs v. Yust,* 126 Colo. 289, 249 P. (2d) 151. Where a municipality appears as petitioner seeking both change in point of diversion and manner of use, no exception is made in its behalf to this rule. *Baker v. Pueblo, supra; Farmers Reservoir & Irrigation Co. v. Lafayette, supra.* What condition and limitation should be imposed depends upon the facts and surrounding circumstances in each particular instance. In this case it would require a full accounting not only of the amount of water reasonably required for the irrigation of Swadley lands and the proper return flow to the creek therefrom, but also should be taken into account the actual consumptive use of the City of Golden and the probable return flow to Clear Creek from such uses. If the return flow from the City use be shown to be greater than the return flow from the irrigation of farm lands, naturally the period and extent of use might be increased by the petitioner and the conditions imposed would not have to be so severe as where it would appear that the return flow was equal. It is the purpose of the law, both statutory and by decision, to protect all appropriators and holders or water rights; to this end all elements of loss to the stream by virtue of the proposed change should be considered and accounted for; and thereupon such appropriate provisions of limitation inserted in the decree as

the facts would seem to warrant. *Dry Creek Ditch Co. v. Coal Ridge Co.,* 109 Colo. 556, 564, 565, 129 P. (2d) 292.

It apparently was the impression of the trial court, and is contended by counsel on behalf of petitioner, that the rules and principles hereinabove discussed were modified by our decision in the case of *Brighton Ditch Co. v. Englewood,* 124 Colo. 366, 237 P. (2d) 116. A careful study of that opinion will show that, instead of being in relaxation of the foregoing rules, it is in complete conformity therewith, the holding being specifically that vested rights of others "include not only right to diversion of water from the stream in the chronological order of priority, but also the right to maintenance of conditions on the stream existing at the time of appropriation." It is indicated that our Court in the Englewood case, supra, placed the burden of proof to show injury upon the protestant, but this is not an accurate impression. We therein held that a protestant must rely upon injury to himself and not to his neighbor, and that where he claims special damage or injury accruing particularly to him on account of peculiar surrounding conditions, he must show those conditions and the manner in which he will be especially affected by the proposed change; but neither of those issues is presented here. The facts in the Englewood case also were considerably different from the facts in the present case. There, former changes had been decreed and conditions imposed which carried over into the Englewood case, and further conditions and limitations were offered by Englewood, resulting in the trial court finding that no additional conditions were required. Contention is made that in the Englewood case we approved the ruling of the trial court sustaining objections to evidence of crop use on irrigated land over a period of years and that, by reason of such pronouncement, it now is unnecessary to cover land use in presentation of evidence. This contention is without merit, first, for the reason that the record in the Englewood case fails to show any such specification of error,

and, second, that any case is authority only for the subjects discussed in the opinion and does not reach to controversies contained only in the briefs and arguments of counsel. Evidence should be introduced showing duty of water on the land from which the decree is sought to be changed. This may be done by calling as witnesses persons familiar with the area and who have had qualifying experience in the irrigation of crops under the same or similar conditions. The testimony of engineers is, of course, pertinent and proper; but likewise is the testimony of any capable experienced farmer, who for years has been engaged in the irrigation of crops under similar conditions. Either, upon a careful examination of the premises, can arrive at a very close estimate relative to the duty of water thereon.

As it now stands, we regard the judgment unsupported by proper record evidence. In this instance it would be improper to order dismissal of this action; but it should be and is remanded with direction to the trial court to vacate the decree heretofore entered and for further proceedings in conformity with the rules and principles herein set forth.

Mr. JUSTICE HOLLAND not participating.

*On Petition for Rehearing.*

*Rehearing Denied.*

Mr. JUSTICE CLARK:

Upon petition for rehearing, it appearing that under our foregoing opinion the City of Golden is the owner of the priorities herein involved and that, under proper conditions, limitations and provisions in the final decree to insure against injury to the rights of junior appropriators, it has the right to a decree for change of point of diversion, and it being called to our attention that no serious dispute exists to the extent of .81 of a second foot of water; it is therefore ordered that pending final

determination of said cause upon retrial, said City of Golden shall be permitted to divert at the headgate of the Church Ditch a portion of said priorities, not in excess of .81 of a cubic foot of water per second of time. This order is to be considered as tentative only and subject to such change as the trial court may determine after the conclusion of such further hearings as are to be held in connection with this matter.

Save for this modification, petition for rehearing is denied.