UNITED STATES of America,
Appellant,

v.

ALPINE LAND & RESERVOIR CO.; Truckee-Carson Irrigation District; Sierra-Pacific Power Co.; State of Nevada; and Certain Upper Carson River Water Users, Appellees.

No. 81–4084.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided Jan. 24, 1983.

Harry Swainston, Carson City, Nev., Dirk D. Snel, Washington, D.C., for appellant.

James W. Johnson, Jr., George Folsom, Woodburn, Forman, Wedge, Blakey & Jeppson, Reno, Nev., for appellees.

Before KENNEDY, ALARCON and NELSON, Circuit Judges.

KENNEDY, Circuit Judge:

The Carson River runs eastward from the Sierra Nevada range in California, through a part of Toiyabe National Forest, and then to Lahontan Reservoir in central Nevada, where it joins with water from the Truckee

River Diversion Canal. *See United States v. Alpine Land & Reservoir Co.,* 431 F.2d 763, 765–66 (9th Cir.1970), *cert. denied,* 401 U.S. 909, 91 S.Ct. 869, 27 L.Ed.2d 807 (1971). Downstream from Lahontan Reservoir lies the Carson Division of the Newlands Project, whose farmers are mostly members of the Truckee-Carson Irrigation District (TCID), one of appellees here. The Newlands Project on Nevada's Carson River was one of the first constructed under the Reclamation Act of 1902, 32 Stat. 390, *codified at* 43 U.S.C. § 371 *et seq.*

This suit was begun by the United States as a quiet title action in 1925, although no final decision was rendered until the decision of the district court in 1980, reported at 503 F.Supp. 877 (D.Nev.1980). This litigation is a "virtually comprehensive adjudication," *United States v. Truckee-Carson Irrigation District,* 649 F.2d 1286, 1308 (9th Cir.1981), of the rights of all parties to the Carson's waters, and much of the district court's opinion and extensive final order is not contested by any party. On this appeal, the United States does argue that the water duty awarded farms in the Newlands Project was too generous; that the Secretary of the Interior, rather than the Nevada State Engineer, should have primary jurisdiction over change applications; that the district court erred in rejecting the United States' claim of a reserved right of instream flow for Toiyabe National Forest; and that no water duty for fishing and recreation at Lahontan reservation should have been awarded. *Amici* Paiute Tribe, Environmental Defense Fund, and Sierra Club agree with the United States in whole or in part. Supporting the decision are TCID, the State of Nevada, and Sierra Pacific Power Company.[1] We uphold the decision of the district court, for the most part, although we vacate the judgment with reference to the water duty awarded for public recreation pending more specific findings. We discuss the issues seriatim.

I. *Water Duty for Newlands Project Farmers*

The district judge awarded a water duty of 3.5 acre-feet/year (afa) to bottomland farmers, and 4.5 afa to benchland farmers in the Newlands Project. The United States and supporting parties argue that the district court erred in making a *de novo* determination of beneficial use. The Government argues that the district court instead should have ruled in reliance on contracts executed by the Department of the Interior and some landowners which purport to limit the water duty to a maximum of 3 afa, or alternatively on a 1903 Nevada statute, passed after the priority date of the Newlands Project, which limited beneficial use to 3 afa until it was repealed in 1905. The United States also argues that the findings of the district court on beneficial use were inadequate. We reject these contentions.

Our starting point is section 8 of the Reclamation Act of 1902, 32 Stat. 390, now codified at 43 U.S.C. § 372 (1976), which states:

> The right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right.

By the terms of the statute, beneficial use is the "basis" and "measure" as well as the "limit" of water rights; it sets the maximum water duty, but, under the statute, it is also the necessary rationale and source of the right. This determination by Congress is explained both by the historical significance of the beneficial use concept in western water law, and by the absence of any other intelligible standard offered by these parties to measure water rights.

The legislative history of the 1902 Reclamation Act makes clear that the "principles underlying and governing water rights" under the Act were to be the existing beneficial use concepts of western water law. 35 Cong.Rec. 6677 (1902) (remarks of Rep. Mondell). Section 8 "clearly recognizes the rule of prior appropriation which prevails in

---

1. Certain upstream farmers have participated as appellees in this suit, but their only interest is in defending the water duty awarded them, which the United States does not challenge.

the arid region, and, what is highly important, specifies the character of the water right which is provided for under the provisions of the act." *Id.* at 6678. Rep. Mondell went on to describe the manner in which a water duty would vest:

> The main line canals having been constructed by the Government, the entry-man or landowner would proceed to the construction of such laterals as were necessary for the irrigation of his own tract and the preparation of the same to receive the water. The water having been beneficially applied and payments having been made under the provisions of the bill, the water right would become appurtenant to the land irrigated and inalienable therefrom. The water rights provided by the act are of that character which irrigation experience has demonstrated to be the most perfect.
>
> The settlor or landowner who complies with all the conditions of the act secures a perpetual right to the use of a sufficient amount of water to irrigate his land, but this right lapses if he fails to put the water to beneficial use . . . .

*Id.* at 6679. While there were provisions of federal law which were intended to displace state law, such as the 160-acre limit at issue in *United States v. Tulare Lake Canal Co.,* 677 F.2d 713 (1982), beneficial use itself was intended to be governed by state law. *See* Remarks of Rep. Mondell, *supra;* 35 Cong. Rec. 2222 (1907) (remarks of Sen. Clark); *California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978). We do not deny or overlook the differences in water law among the various western states. However, on the point of what is beneficial use the law is "general and without significant dissent." 1 *Waters and Water Rights* § 19.2 at 85 (R. Clark ed. 1967). Therefore, unless it is shown that a state applies a special rule of law on a relevant point, it is proper to apply general law in defining beneficial use.

We briefly review these general principles here. The major conceptual tool for implementing beneficial use is the water duty, which is the amount of water an appropriator is entitled to use, including a margin for conveyance loss. This definition of "water duty" is often quoted:

> It is that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions.

*Farmers Highline Canal & Reservoir Co. v. City of Golden,* 129 Colo. 575, 584–85, 272 P.2d 629, 634 (1954); *see also Basin Electric Power Cooperative v. State Board of Control,* 578 P.2d 557, 564 (Wyo.1978); *State ex rel. Reynolds v. Mears,* 86 N.M. 510, 515–16, 525 P.2d 870, 875–76 (1974); 1 *Waters and Water Rights* §§ 19.2–19.5 at 85–93 (1972); 5 *id.* § 408.2 at 79–80 (R. Clark ed. 1967).

There are two qualifications to what might be termed the general rule that water is beneficially used (in an accepted type of use such as irrigation) when it is usefully employed by the appropriator. First, the use cannot include any element of "waste" which, among other things, precludes unreasonable transmission loss and use of cost-ineffective methods. *See, e.g., State ex rel. Erickson v. McLean,* 62 N.M. 264, 271, 308 P.2d 983, 987 (1957); *Glenn Dale Ranches, Inc. v. Shaub,* 94 Idaho 585, 588, 494 P.2d 1029, 1031–32 (1972); 1 *Waters and Water Rights* §§ 19.2, 19.5 at 87, 91–92 (R. Clark ed. 1967). Second, and often overlapping, the use cannot be "unreasonable" considering alternative uses of the water. In *Vineyard Land & Stock Co. v. Twin Falls Salmon River Land & Water Co.,* 245 F. 9, 22–25 (9th Cir.1917), although application of additional water over the water duty awarded by the district court would provide some benefit to the appropriator, we upheld the district court's water duty because the gain was so small (compared to the amount of water necessary to bring it forth) that the additional increment of water would not be "economically applied." *Id.* at 24. *See also In re Water Rights of Deschutes River & Its Tributar-*

*ies,* 134 Or. 623, 664–68, 286 P. 563, 577–78 (1930) (use of water to carry off debris in aid of power generation not allowed in irrigation season when the same water would otherwise irrigate 1600 acres); *Tulare Irrigation Dist. v. Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489, 567–68, 45 P.2d 972, 1007 (1935) (use of water by farmers to drown gophers not allowed in area with chronic water shortage). *See generally* Trelease, *The Concept of Reasonable Beneficial Use in the Law of Surface Streams,* 12 Wyo.L.J. 1, 14–17 (1956).

The United States and supporting *amici* argue that the district court should have given decisive significance to contracts limiting the water duty to 3 afa which the Secretary of the Interior executed with some but not all landowners. We are also told all of the Newlands Project is limited to a 3 afa water duty by virtue of 1903 Nevada Stats., Chap. IV, § 2:

> the quantity of water which may be appropriated or used for irrigation purposes in the State of Nevada [is limited to] three acre feet per year for each acre of land supplied.

The district court was not bound by either the contracts or the 1903 Nevada statute if either pointed to a different water duty than a beneficial use inquiry would indicate. As for the contracts, the provision of section 8 mandating a beneficial use standard is a "specific congressional directive" which acts as a "restraint upon the Secretary." *See California v. United States,* 438 U.S. 645, 678 n. 31, 98 S.Ct. 2985, 3002 n. 31, 57 L.Ed.2d 1018 (1978); *Fox v. Ickes,* 137 F.2d 30 (D.C.Cir.), *cert. denied,* 320 U.S. 792, 64 S.Ct. 204, 88 L.Ed. 477 (1943); *Lawrence v. Southard,* 192 Wash. 287, 73 P.2d 722 (1937).

■ The district judge found that under the Nevada "relation back" doctrine, the 1903 statute did not affect the Project farmers' rights which had vested in 1902. We do not find this decision of the district court on the law of its own state incorrect.

Even assuming the Nevada statute provided a measure other than beneficial use, the limit would be ineffective in view of the binding "congressional directive" that "the water right must be . . . governed by beneficial use." *California v. United States,* 438 U.S. 645, 668 n. 21, 98 S.Ct. 2985, 2997 n. 21, 57 L.Ed.2d 1018 (1978).

■ The United States and *amici* argue that, even if beneficial use is the measure, the contracts and Nevada law are compelling evidence of beneficial use. Although we reject the conclusion the United States wants, we do not hold that the Secretary's contracts were *ultra vires* when made, or that the Nevada statute (assumed for the moment to be applicable) stated a limitation inconsistent with beneficial use as of 1903. This is not the question before us. The issue we review is whether the district court reached a correct determination of beneficial use as of 1980. It is settled that beneficial use expresses a dynamic concept, which is a "variable according to conditions," *Farmers Highline Canal,* 129 Colo. at 585, 272 P.2d at 534, and therefore over time, *see United States v. Fallbrook Public Utility District,* 347 F.2d 48, 58 (9th Cir.1965); *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.,* 3 Cal.2d 489, 567, 45 P.2d 972, 1007 (1935); *Basin Electric Power Cooperative v. State Board of Control,* 578 P.2d 557, 563 (Wyo. 1978). As counsel for the United States argued before the district court, "we are fortunate that this case has dragged along so long, because we know more about the Carson Valley than we did originally." 1979 Record, Vol. I at 16. All parties presented evidence aimed at identification of current beneficial use, as a matter of fact. The district court, in the absence of any earlier administrative or judicial determination of beneficial use, was correct to find beneficial use as of the present time, as shown by the best available current information.[2]

---

2. *Amicus* Paiute Tribe suggests that this holding will cause uncertainty and instability in water law. We find the law to be clear on this point; in the absence of a conclusive determi-

nation of water duty by administrative or judicial proceedings, a district court in a quiet title action should determine beneficial use on the best current evidence available. The holding of

■ In the circumstances, it is clear the district court did not err in giving the contracts and the Nevada statute relied on by the United States little evidentiary significance. The United States has made no consistent determination that 3 afa is the maximum water duty that could be beneficially used by the Project farmers. Indeed, it appears that one landowner would sign a contract containing a 3 afa limit, while others, identically situated, signed contracts promising all the water needed for "proper irrigation." An administrative determination which is not consistently maintained is entitled to little, if any, deference. *See County of Washington, Oregon v. Gunther,* 452 U.S. 161, 177–78, 101 S.Ct. 2242, 2252–2253, 68 L.Ed.2d 751 (1981); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 858 n. 25, 95 S.Ct. 2051, 2063 n. 25, 44 L.Ed.2d 621 (1975). We further note the evidence showed that the 3 afa contracts were never enforced; historically, no distinction was made between landowners with and without the limiting contracts. The district judge did not err in giving little weight to the scattered contracts with 3 afa limits in the context of a case in which ample expert evidence of actual present beneficial use was heard.

For similar reasons, the district court did not err in ignoring the 3 afa limit of the 1903 Nevada statute. The Nevada statute has been repealed for many years. Testimony before the district court indicated that water duties of more than 3 afa are common in Nevada. We agree that the statute's repeal "represents a legislative judgment that a specific limitation was ill-advised under the varying conditions of climate and soil in Nevada." 503 F.Supp. at 886.

■ The United States also contends that the findings of the district court on beneficial use were not adequate. It is true that findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *South-Western Publishing Co. v. Simons,* 651 F.2d 653, 655 (9th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), quoting *Alpha Distributing Co. of California v. Jack Daniel Distillery,* 454 F.2d 442, 453 (9th Cir.1972), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1973). The opinion of the district judge fulfilled this requirement. In light of the record, we can readily understand the grounds of the district court's opinion; all issues raised were intelligibly dealt with by the district court.

The United States does not squarely argue that the district court made any legal errors in finding beneficial use.[3] One of the Government's arguments, however, might be interpreted as arguing that the district court erred in defining beneficial use as the amount of water which would yield "maximum crop yields," rather than that amount which, "economically applied," would produce "historical yield" over most of the past 26 years. This contention fails because the case, as argued to the district court, presented a factual dispute rather than a legal one. The beneficial use controversy here was essentially a question of fact, and all parties proceeded in accordance with well-settled general principles to determine it. There was uncontradicted testimony that the water duty awarded by the

---

the district court in this case, which we affirm, does not interfere with settled expectations, since the water duty awarded is in accord with actual historical use of the Carson's waters by the Project farmers. It is actual use which, if reasonable, is evidentiary of "beneficial use," not unenforced contracts or limits set by a repealed state law.

3. The United States argues that the district court's decision was corrupted by an erroneous belief that the water rights in question were

"owned" by the Newlands Project farmers, subject only to the "lienholder" interest of the United States in repayment of project costs. We do not see the relevance of this premise to the issue of beneficial use. The United States' interest in the determination of a user's water duty, as declared by the statute, is to see that beneficial use is its measure and limit. Any interest of the United States in other aspects of the project can hardly affect the beneficial use inquiry.

district court has been customarily provided the farmers since before 1926, when TCID began operation of the Newlands Project. This has also been the water guaranteed the Newlands Project farmers under the Orr Ditch decree. The Orr Ditch decree governs the Truckee's waters, which, by means of the Truckee River Division Canal, join with the Carson's waters at Lahontan Reservoir. *See generally United States v. Truckee-Carson Irrigation District,* 649 F.2d 1286 (9th Cir.1981). TCID's evidence tended to show this historical water usage was reasonable. The United States' evidence tended to show that historical yields could be obtained with less water. Once the district court corrected for the fact that the United States' expert used alfalfa yields obtained in lysimeters rather than those obtained under necessarily less meticulous field conditions, and for the fact the United States' expert used yields over the past 26 years rather than the significantly higher production of the past 10 years as a benchmark, the evidence presented by the United States was in broad agreement with that presented by TCID.[4] *See* 503 F.Supp. at 888.

Neither the United States nor the Paiute Tribe argues that the district court's findings were clearly erroneous. *Amicus* Paiute Tribe does suggest that we should find waste by virtue of the comment of this court in *United States v. TCID,* 649 F.2d at 1311, that "the Newlands Project is relatively inefficient in its use of water." This comment was not based on any factfinding by our court or by the court below, and it cannot substitute for evidence of the existence and extent of waste or inefficiency before the trial court. There was credible evidence below to indicate the contrary: that a reduction to the 3 afa water duty sought after by the United States would drastically reduce the farmers' yields over the long term. Yield was correlated with water use in a linear relation over the relevant water levels. Agricultural yields are a significant and reliable guide in determining beneficial use.

Findings of a district judge, made in reliance on controverted expert testimony, will not be disturbed unless clearly erroneous. *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.,* 365 F.Supp. 235 (N.D.Cal.1972). The Supreme Court has only recently emphasized our narrow scope of review when we review a factual determination of a district court that does not evince any misapprehension of relevant legal standards. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* —— U.S. ——, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). Our review of the record indicates there was ample evidentiary support for the decision of the trial court that 3.5 afa was an appropriate water duty for bottomlands, and 4.5 afa for benchlands, with their lower water table and drier soil. Since the district court made no legal error in defining beneficial use, and its factual findings were well within a permissible view of the weight of the evidence, the water duty awarded the Project farmers must be upheld.

## II. *Primary Administrative Jurisdiction With the Nevada State Engineer*

The district judge held that applications for change in place of diversion or manner or place of use should be directed to the Nevada State Engineer. These change applications are of limited significance in that they only seek permission to use water already appropriated for a purpose different than that originally designated. For example, if a farmer were to change his manner of irrigation, or to subdivide his farm into

---

4. Thus, contrary to the argument of the United States, the district court did not rest on the conclusory statement that TCID's expert evidence was "more credible" than that so vigorously put forward by the United States. Indeed, in determining consumptive use (the actual amount used by the growing crop, leaving aside transmission losses), the district court

used the figure argued for by the United States' expert, with the two corrections noted. No one has argued that the 2.99 afa consumptive use figure found by the district court on the basis of the United States' evidence was inconsistent with the water duties awarded by the district court.

residential properties, under the district court's order, the Nevada State Engineer would decide, under the state statutory scheme, whether the application would "tend to impair the value of existing rights or to be otherwise detrimental to the public welfare." Nev.Rev.Stat. § 533.370(1).

The United States is not concerned with the routine change application, but with the possibility that federal interests will be ignored by the Nevada State Engineer. Under section 8 of the 1902 Reclamation Act, discussed *supra,* appropriated water must be applied to irrigation; it cannot be severed as a commodity for use on land to which it would not be appurtenant. As described by Rep. Mondell, a water right under the Reclamation Act "only extends to the use of the water on and for the tract originally irrigated"; there is no general "property right in water with power to sell and dispose of the same elsewhere and for other purposes than originally intended." 35 Cong.Rec. 6679 (1902).

■ We agree with the district judge that the notice and protest procedures of Nevada law are adequate to allow exploration of these issues, when they arise, before the state engineer. The Supreme Court has held, in *California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978), that state law will control the distribution of water rights to the extent that there is no preempting federal directive. We agree with the district judge that "the conspicuous absence of transfer procedures, taken in conjunction with the clear general deference to state water law, impels the conclusion that Congress intended transfers to be subject to state water law." 503 F.Supp. at 884. Powerful support for this conclusion is found in the legislative history of the 1902 Reclamation Act:

> The conditions in each and every State and Territory are different. What would be applicable in one locality is totally and absolutely inapplicable in another. The conditions that prevail at 7,000 feet of altitude are different from those that prevail at almost sea level. In each and every one of the States and Territories affected, after a long series of experiments, after a due consideration of conditions, there has arisen a set of men who are especially qualified to deal with local conditions.
>
> Everyone of these States and Territories has an accomplished and experienced corps of engineers who for years have devoted their energies and their learning to a solution to the problem of irrigation in their individual localities.

35 Cong.Rec. 2222 (1902) (remarks of Sen. Clark). *Cf. Colorado River Water Conservation District v. United States,* 424 U.S. 800, 819–20, 96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483 (1976) (discussing a similar, but later, congressional recognition in the McCarran amendment). We are assured that the United States will receive notice of each change application, and may participate, under Nev.Rev.Stat. §§ 533.110–533.130, in proceedings before the state engineer who is, under our Constitution, bound to follow federal law. The decree of the district court also allows for appeal of change applications to the federal district court for the District of Nevada, and no appellee contests this provision. These two safeguards provide full vindication of the admitted federal interests in the operation of federal reclamation projects.

■ Fundamental principles of federalism require the national government to consult state processes and weigh state substantive law in shaping and defining a federal water policy. *California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

### III. *Toiyabe National Forest*

■ The district court rejected the United States' argument that it was entitled to a water duty of instream flow, reserved by implication when the affected portion of the Toiyabe National Forest was created by statute. *See Winters v. United States,* 207 U.S. 564, 577, 28 S.Ct. 207, 211, 52 L.Ed. 340 (1908); *Arizona v. California,* 373 U.S. 546, 597–98, 83 S.Ct. 1468, 1496–1497, 10 L.Ed.2d 542 (1963); *Cappaert v. United States,* 426 U.S. 128, 143–46, 96 S.Ct.

2062, 2071–2073, 48 L.Ed.2d 523 (1976); *United States v. New Mexico,* 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978).

As we understand it, the district court ruled, 503 F.Supp. at 893, that the United States would have been entitled to a reserved right if it had shown that the right was "necessary to preserve the timber or to secure favorable water flows for private and public uses under state law." *United States v. New Mexico,* 438 U.S. at 718, 98 S.Ct. at 3023; *see also id.* at 724–25, 98 S.Ct. at 3026 (Powell, J., dissenting in part).

The district court held, however, that the United States did not meet this standard. "The evidence to support the assertion that maintenance of such minimum flows is necessary for watershed protection or timber production ... was insignificant." 503 F.Supp. at 893.

We first find it necessary to discuss the nature of a reserved instream flow right. It appeared from the evidence presented below that since the sought-after right is one of instream flow only and not of diversion, awarding it would not harm downstream interests. The only result of recognizing a reserved right of instream flow will be to restrict upstream diversion by appropriators with a later priority date than the date of dedication of the national forest. It is possible that such upstream diversion might one day threaten, but the United States did not demonstrate that the water rights of existing downstream interests in the Carson's water would not suffice to protect the banks of the Carson's tributaries within the forest from erosion. In fact, in a colloquy with Judge Thompson below, counsel for the United States agreed that "the possibility that someone else will come in and take water for the detriment of those existing [instream] flows" was avoided "by making a finding that all the waters of the Carson River and its tributaries have been fully appropriated." Moreover, the United States' evidence of what average instream flows were fell far short of a demonstration that the instream flow was necessary to fulfillment of the purposes of the forest. *Cf. Avondale Irr. Dist. v.*

*North Idaho Properties, Inc.,* 99 Idaho 30, 39, 577 P.2d 9, 18 (1978); *Boles & Elliott, United States v. New Mexico and the Course of Federal Reserved Water Rights,* 51 Colo.L.Rev. 209, 229 (1978). The district judge did not err in rejecting the United States' claim for a reserved water right with respect to the parties in this litigation.

## IV. *A Water Duty for Recreation at Lahontan Reservation*

■ The district court in its opinion took judicial notice of the fact that fishing and public recreation have taken place on Lahontan Reservoir virtually since the construction of the dam. Thus, the water has been beneficially used and the United States has not abandoned or forfeited these rights. 503 F.Supp. at 883. The district court thus awarded a water duty of 30,000 acre-feet for such activities, finding that the evidence indicated this was the "minimum amount of water that must be retained in the reservoir to support the fish habitat and provide swimming and boating areas." *Id.* at 889. It is not clear to us what evidence the court relied upon in this respect. Certainly no party presented evidence to establish a specific, public recreational right. The United States did not seek this water duty, and on appeal argues that it is erroneous, as do *amici* and TCID.

We are unwilling to accept as determinative the agreement of the parties that no such water duty is proper. Those taking advantage of these recreational opportunities were not parties, or at most, were represented most grudgingly and inadequately by the United States.

While the district court found that "the public" could gain rights to a reclamation project reservoir by continuous beneficial use under state law, 503 F.Supp. at 883, whether water rights for public recreation are permissible under the Reclamation Act has not been briefed or discussed. We are also unsure of the necessity for the nonconsumptive water duty awarded by the district court. Fishing and recreation have been consistently enjoyed, notwithstanding the absence of any formally awarded water duty; since the waters of the Carson are

fully appropriated, we do not foresee how the public's recreational benefits can be threatened by any new use. In this respect, the water duty awarded the public for instream use resembles the guarantee of instream flow the United States unsuccessfully sought for Toiyabe National Forest. Assuming for the moment that such a water duty is proper in principle, we are not sure the district court had an adequate factual basis for awarding the precise water duty chosen. We therefore vacate the portions of the district court's order pertaining to a water duty for public recreation.

The district court maintains jurisdiction over this matter. *See Hamilton v. Nakai,* 453 F.2d 152, 155–58 (9th Cir.), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). "A district court's equitable discretion is characterized by flexibility, the need for practicality, and the duty to reconcile the public interest with private needs." *Harjo v. Andrus,* 581 F.2d 949, 952 (D.C.Cir. 1978). We therefore leave it to the determination of the district court to state an orderly resolution of the legal propriety (and if necessary, the factual extent) of a water duty for public recreation. The district court need not allow the issue to lie unresolved; if the United States is unwilling to represent the public, anyone with standing who can adequately represent the public's interest may be allowed to do so. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

█ We do hold that, contrary to the final decree of the district court, any water duty for public recreation that is awarded must be subordinate to the agricultural needs of the Newlands Project farmers. The Lahontan Reservoir, as a project built under the federal Reclamation Act, was intended for the primary benefit of the farmers who would use its waters for irrigation, and any beneficial use of the reservoir by way of recreation could only be incidental to that purpose. *See Jicarilla Apache Tribe v. United States,* 657 F.2d 1126, 1138 (10th Cir.1981).

## CONCLUSION

The district judge awarded a proper water duty to the Newlands Project farmers, properly refused to award a reserved water right of instream flow for Toiyabe National Forest, and properly recognized the primary administrative jurisdiction of the Nevada State Engineer over change applications. We vacate the water duty awarded the United States, for the benefit of fishing and recreation, pending further proceedings on the important legal and factual issues implicit in the matter.

AFFIRMED AS MODIFIED.