In re the CONTESTS OF the CITY OF EAGLE PASS, et al., TO the ADJUDICATION of WATER RIGHTS IN the MIDDLE RIO GRANDE BASIN And CONTRIBUTING TEXAS TRIBUTARIES.

No. 13917–A.

Court of Appeals of Texas, Austin.

Oct. 3, 1984.

Rehearing Denied Dec. 5, 1984.

854

Timothy L. Brown, Booth, Lloyd & Simmons, Austin, for appellant-claimant, City of Eagle Pass, Tex.

Jim Mattox, Atty. Gen., R. Lambeth Townsend, Asst. Atty. Gen., Austin, for appellee, Texas Water Com'n.

R. Glenn Jarvis, Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for Cameron County Water Control & Improvement Dist., et al.

Before SHANNON, EARL W. SMITH and GAMMAGE, JJ.

SHANNON, Justice.

The City of Eagle Pass appeals from the judgment of the district court of Travis County which affirmed, in large part, the final determination by the Texas Water Rights Commission of claims of water rights in the Middle Rio Grande. This Court will affirm the judgment of the district court.

The "Middle Rio Grande" includes the Rio Grande and contributing Texas tributaries from Amistad Dam, in Val Verde County, downstream to Falcon Dam, in Starr County, and includes all or parts of

Val Verde, Kinney, Maverick, Webb, Zapata, Edwards, Dimmit, and Jim Hogg Counties. Users of state water within this area are the Cities of Laredo, Eagle Pass, and Del Rio, several smaller towns and unincorporated communities; those using water for irrigation, industrial and mining purposes; and recreational developments around Falcon Reservoir.

■ The standard of review under the Water Rights Adjudication Act, Tex. Water Code Ann. § 5.301 *et seq.* (1972) is neither a substantial evidence review nor a de novo review. Instead, it is a review made independently of the Commission's determination. *In Re Adjudication of the Water Rights of the Upper Guadalupe Segment of the Guadalupe River Basin,* 642 S.W.2d 438 (Tex.1982).

Eagle Pass holds three certified filings which authorize it to divert water from the Rio Grande. The validity of the certified filings is not disputed, but, instead, at contest is the extent to which two of the certified filings have been perfected. Eagle Pass insists that the district court erred in determining that the City was entitled to a lesser amount of water than the amount claimed by it.

The City's certified filings are Nos. 454, 522 and 540. The City contended that its certified filings should be recognized as perfected to the following extent:

Certified Filing No. 454 — 571 acre-feet of water per annum
Certified Filing No. 522 — 6000 acre-feet of water per annum
Certified Filing No. 540 — 1680 acre-feet of water per annum
TOTAL 8251 acre-feet of water per annum

The district court, however, affirmed the Commission's recognition of Eagle Pass' certified filings as having been perfected only in the following amounts:

Certified Filing No. 454 — 282 acre-feet of water per annum
Certified Filing No. 522 — 3600 acre-feet of water per annum
Certified Filing No. 540 — 1680 acre-feet of water per annum
TOTAL 5562 acre-feet of water per annum

Because the district court's judgment affirmed the Commission's order recognizing certified filing no. 540 to the full extent claimed, naturally Eagle Pass does not complain of that part of the judgment. The City does complain, however, of the judgment in fixing the amount of acre-feet of water per annum for certified filing nos. 454 and 522.

By three points of error Eagle Pass attacks that part of the judgment affirming the Commission's determination that by certified filing no. 454 the City was entitled to divert 282 acre-feet of water per annum. In 1914 Eliza K. Dolch and others filed certified filing no. 454 for irrigation of 571 acres in Maverick County at a diversion rate of twenty cubic feet per second (cfs). Later in the same year, the parties filed their statement of work done indicating 376 acres were ready for irrigation and water was being diverted at fifteen cfs for 150 days.

More than forty years later Eagle Pass purchased a part of certified filing no. 454 from W.M. Stafford, the then holder of the filing. In such transaction Stafford conveyed five cfs to Eagle Pass out of his rights under certified filing no. 454. In 1961, upon written request by Stafford, the Commission's predecessor agency cancelled certified filing no. 454 in its entirety because of voluntary abandonment. At the time of the cancellation proceeding, the agency had no knowledge that Stafford had conveyed any interest in the certified filing to Eagle Pass. The agency, being unaware of the City's interest, did not notify the City of the cancellation proceedings and, as a result, the City had no knowledge

of the order cancelling the certified filing. In 1963, when the agency learned that Eagle Pass held an interest in certified filing no. 454, the agency reinstated certified filing no. 454 to the extent of 282 acre-feet in the name of Eagle Pass.

Eagle Pass argues that the Commission's predecessor impermissibly adjudicated its water rights under certified filing no. 454 in the 1963 order. Although the agency's order, in determining the amount of acre-feet due Eagle Pass, was probably erroneous, *Nueces Co. Water C. & I. Dist. v. Texas Water Rights Com'n.*, 481 S.W.2d 924 (Tex.Civ.App.1972, writ ref'd n.r.e.), the error in the order could have been corrected on appeal. Eagle Pass, however, did not appeal from the agency's 1963 order determining its rights under certified filing no. 454 and, instead, permitted that order to become final.

The 1963 order has been long final and is now binding on Eagle Pass as fully and as completely as a judgment of a court of competent jurisdiction. As such, the agency order is not subject to collateral attack by the City. *Corzelius v. Harrell*, 143 Tex. 509, 186 S.W.2d 961, 967 (1945); *Combs v. State*, 526 S.W.2d 648, 649 (Tex.Civ.App. 1975, writ ref'd n.r.e.). The City's points of error complaining of certified filing no. 454 are overruled.

By two points of error Eagle Pass asserts that the district court erred in failing to conclude as a matter of law that the City had the right under certified filing no. 522 to divert 6000 acre-feet of water per annum from the Rio Grande. The district court declared that it was impossible to determine from the evidence the precise amount of water used pursuant to certified filing no. 522. The district court observed, however, that the water use reports and other evidence indicated a use far less than 6000 acre-feet.

The Eagle Pass Irrigation Company filed certified filing no. 522 in 1914 and declared its intention to irrigate 1200 acres. It is undisputed that irrigation facilities were in place and that a quantity of land was being irrigated at the time of the 1914 filing.

Eagle Pass insists that all of the evidence was that the full 1200 acres was being irrigated at five acre-feet per acre per annum.

In support of such assertion, Eagle Pass relies upon the testimony of two life-time residents of Maverick County, Fred Weyrich and Clarence G. Herring. They testified that a vegetable crop was raised on the tract in the winter and a grain or hay crop was grown in the summer. The summer crops required a greater amount of irrigation water. They testified that the frequency of irrigation depended upon the crop grown. Both witnesses indicated, however, that the composition of the soil varied over the 1200 acre tract, requiring more water near the river and less water away from the river. Herring testified that the length of the winter growing season varied, depending upon the type of vegetable grown.

In defense of the judgment, the Commission directs our attention to the water use reports showing that through 1919, the maximum amount of water used for irrigation under certified filing no. 522 was only 2045 acre-feet per annum, far below the 6000 feet presently claimed by the City. This fact is significant, suggests the Commission, since Weyrich testified that the full irrigation operation on the 1200 acre tract was underway by 1917 or 1918.

The district court considered the evidence respecting the perfection of the water right under the certified filing. It is, of course, trite learning that the weight accorded to and the probative force of evidence is a matter entirely for the trier of fact, in this instance, the trial court. Contrary to the arguments of Eagle Pass, all of the evidence *did not* support its claim of 6000 acre-feet of water per annum. Most important, the only documentary proof of use under certified filing 522 consisted of the water use reports filed early in the operation. By 1917 or 1918, the full irrigation program was in progress and the actual use reflected a figure about one third of the amount presently claimed by the City. Also of some significance is that the City's

witnesses admitted that the actual water use varied considerably depending upon the different soil types existent in the tract and upon the kind of vegetable crop grown. Finally, the court could consider that the City's case was entirely dependent upon the recollections of aged witnesses of events long past.

In point of error three Eagle Pass claims that the district court erred in its adjudication of certified filing no. 522 by applying a "duty of water" standard to evaluate the water right. The district court did declare in its additional conclusions of law that "[t]he Commission's determination that the three acre-foot duty should be used as a measure of perfection under C.F. 522 was reasonable in light of the evidence contained in the record."

Eagle Pass refers the Court to the definition of duty of water found in a report of the Commission's predecessor agency:

By duty of water is meant the service it [water] will or should perform. The question to be answered in an investigation of the duty of water in irrigation may be expressed two ways: How much water is required to economically irrigate a given acre of land; or what area of land will a given quantity of water economically irrigate? [*Second Report of the Board of Water Engineers, Covering the Two-Year Period from September 1, 1914, to August 31, 1916, Inclusive,* Page 70.]

The Supreme Court of Nebraska has defined "duty of water" as

[s]uch a quantity of water necessary, when economically conducted and applied to land without unnecessary loss, as will result in the successful growing of crops. [*Enterprise Irr. Dist. v. Willis,* 135 Neb. 827, 284 N.W. 326, 329 (1939).]

Although the expression 'Duty of Water', in the opinions of some present-day scholarly hydrologists and technical engineers, may be outmoded, provincial, unscientific, and otherwise objectionable, nevertheless it is a term well understood and accepted by every rancher and farmer who has had practical experience in the artificial irrigation of land for the production of crops. *It is that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon.* It is not a hard and fast unit of measurement, but *is variable* according to conditions. [*Farmers Highline Canal & Reservoir Co. v. City of Golden,* 129 Colo. 575, 272 P.2d 629, 634 (1954). (emphasis added)]

The Court in *City of Golden* set out several factors which should be considered in determining the duty of water:

Land characteristics at the place of use are important; location; slope; depth of soil; whether it is loose or close; if underlain with gravel or impervious material; its composition and general adaptability for the growing of irrigated crops; all are taken into consideration. Climate is a feature not to be overlooked, as also are the kinds of crops ordinarily grown thereon and the proportion of the area devoted to each type of crop and the rotation thereof. In fact, every element that concerns or affects the consumption of water in the particular case before the court is to be considered.

Eagle Pass asserts that application of a duty of water sets the maximum that is predetermined by the agency to be beneficial without reference to evidence of past use of water. On the other hand, the Texas Water Code, according to the City, requires consideration of the actual amount of water used. The City suggests that application of the duty of water is proper for calculating the extent of a water right only when little or no evidence is readily available of past usage and that application of the duty of water in this case was inappropriate because the "uncontroverted evidence establishes actual amounts used."

Even under the City's theory, application of the duty of water was not improper because, contrary to the City's insistence,

858

the evidence did not conclusively establish the past use of water under certified filing no. 522. In point of fact, the only documentary proof indicated an actual use far below that recalled by the City's witnesses.

Moreover, this Court is convinced that the judgment may be affirmed without reference to, and reliance upon, the duty of water concept.

Texas Water Code § 11.025 (Supp.1984) provides:

A right to use state water under a permit or a certified filing (C.F.) is limited not only to the amount specifically appropriated but also to the amount which is being or can be *beneficially used* for the purposes specified in the appropriation, and all water not so used is considered not appropriated. (emphasis added)

*Texas Water Code § 11.002(5) (Supp. 1984)* defines "Beneficial Use" as the amount of water which is economically necessary for a purpose authorized by this chapter, when reasonable intelligence and reasonable diligence are used in applying the water to that purpose.

 The owner of a certified filing has the right to all of the water appropriated which may be used in a beneficial and nonwasteful manner. *In Re Adjudication of the Water Rights of the Upper Guadalupe Segment of the Guadalupe River Basin, supra; Texas Water Rights Commission v. Wright*, 464 S.W.2d 642 (Tex.1971).

■ As this Court understands the quoted provisions of the Water Code and the Supreme Court opinions, the law requires a consideration of the amounts of water actually used and whether such quantity was economically necessary when used reasonably and diligently.

■ The City's witnesses recalled water usage which, in the main, would justify the City's claim of 6000 acre-feet per annum. The water use report, however, showed an actual use far below that claimed by the City. The trial court was completely justified in concluding from the conflicting evidence, alone, that 3600 acre-feet per annum more nearly reflected the extent of use

than did 6000 acre-feet per annum. It was unnecessary for the district court to refer to the Commission's report and to rely upon an application of a duty of water in order to make that determination. The point of error is overruled.

■ Several down-stream water control and improvement districts have filed a brief in which they complain by cross-point of the judgment, contending that Eagle Pass obtained more acre-feet of water per annum than was shown perfected under certified filing no. 522. The districts also claim that the district court erred by failing to apply the "two times 1965 actual municipal use" standard applied in prior adjudication. The cross-points are without merit and are overruled.

The judgment is affirmed.